# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>PREMIER HOLDING CORPORATION,<br>RANDALL LETCAVAGE, and JOSEPH<br>GREENBLATT,<br><br>　　　　　　　　Defendants, | 17 Civ. 9845 (LGS) |

### PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
### FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
### TO DEFENDANT PREMIER HOLDING CORPORATION

Plaintiff Securities and Exchange Commission (the "Commission") — under Rules 26, 33, and 34 of the Federal Rules of Civil Procedure (the "Rules") and Rules 26.2, 26.3, and 33.3 of the Local Civil Rules of the United States District Court for the Southern District of New York (the "Local Rules") — requests that Defendant Premier Holding Corporation ("Premier"), in accordance with the definitions and instructions set forth below, produce or begin producing the documents called for by the following document requests (the "Requests") within 30 days from the date of service of these Requests, at the Commission's offices, located at Brookfield Place, 200 Vesey Street, Room 400, New York, NY 10281-1022 (the "Commission's Address").

### DEFINITIONS

1.　　The definitions and constructions set forth in Local Rules 26.3(c) and 26.3(d) are fully incorporated here by reference.

2. Any Pronoun shall mean the masculine, feminine or neuter gender, and singular or plural, as in each case may be appropriate.

3. Any word used in the plural shall be construed in the singular and any word in the singular shall be construed in the plural where relevant within these Definitions and the following Instructions and as necessary to bring within the scope of a Request all responses that might otherwise be construed to be outside its scope.

4. The words "and" and "or" shall be construed conjunctively and disjunctively where relevant within these Definitions and the following Instructions and as necessary to bring with the scope of a Request all responses which might otherwise be construed to include the word "every" and "every" shall be construed to include the word "each." "Any" shall be construed to include "all" and "all" shall be construed to include the word "any."

5. "Concerning," "referring to," or "relating to" shall mean embodying, connected with, commenting on, responding to, showing, describing, analyzing, reflecting or constituting.

6. "Communication" means oral conversations, conversations by telephone, meetings, electronic mail and any other exchange of information in any form.

7. As used herein, the term "documents" means the original and all copies, including all copies which are different in any way from the original (whether by interlineation, receipt stamp, notation, indication of copy sent or received or otherwise), regardless of location, of all handwritten, typed, printed, photostatted, photographed, recorded, transcribed, punched, taped, filmed, or graphic matter, included recorded matter of every kind of description, however produced or reproduced, whether draft or final, original, copy or reproduction in Your custody, possession or control or known to have been created, including, but not limited to, letters, correspondence, envelopes, blueprints, papers, diaries, daily logs, photographs, telegrams, mailgrams, telexes, telex files, cables, teletypes, books, opinion, journals, fact sheets, offering sheets, credit reports, credit files, credit requests,

investment reports, appraisals, investment analyses, legal opinions, commitment letters, closing documents, estimates, calendars, appointment books, authorizations, forecasts, ledgers, reports and/or summaries of investigations, bills, statements, negotiable instruments, checks (front and back including all endorsements), check stubs, computer printouts, memoranda, notes, notebooks, records, tapes, sketches, drawings, graphs, memoranda or minutes of meetings (or of telephone conversations, electronic conversations or personal conversations), messages, telephone messages, telephone logs, charts, maps, graphs, contracts, subcontracts, agreements, retainers, purchase orders, transcripts, receipts, invoices, reports, studies, notices, accounts, account statements, or other material in any way similar to any of the foregoing, however denominated by You, including, but not limited to, any information contained in any computer although not printed out. "Documents" also includes any summarizations, compilations or indices of "documents."

    8. "Information" means documents or communication, as those terms are defined herein, or any other material, fact or detail.

    9. "Premier" or "You" means Premier Holding Corporation, and its predecessors, successors, affiliates, and subsidiaries, as well as its or their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on its or their behalf, including The Power Company USA, LLC, and Randall Letcavage.

    10. "Letcavage" means Randall Letcavage or any other individual or entity upon whose behalf Letcavage may act.

    11. "TPC" means The Power Company USA, LLC, and its predecessors, successors, affiliates, and subsidiaries, as well as its or their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on its or their behalf.

12. "WePower Ecolutions" means WePower Ecolutions, Inc. and its predecessors, successors, affiliates, and subsidiaries, as well as its or their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on its or their behalf.

13. "iCap" means the iCapital Group, iCapital Finance Inc., iCapital Advisory LLC, iCap Development LLC, and their predecessors, successors, affiliates, and subsidiaries, as well as their or their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on their or their behalf, including Letcavage.

14. "Green Central" means Green Central Holdings Inc. and its predecessors, successors, affiliates, and subsidiaries, as well as its or their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on its or their behalf, including Letcavage.

15. "Nexalin" means Nexalin Technology, Inc. and its predecessors, successors, affiliates, and subsidiaries, as well as its or their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on its or their behalf.

16. "Doty Scott" means Doty Enterprises, Inc. and its predecessors, successors, affiliates, and subsidiaries, as well as its or their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on its or their behalf.

17. "Donovan" means Kevin Donovan or any other individual or entity upon whose behalf Donovan may act.

## INSTRUCTIONS

1.  Produce all documents described below in the Requests section, insofar as the documents are in Your possession, custody, or control, under Rule 34(a), including without limitation, documents in the custody or control of Your attorneys or agents. You do not need to re-produce documents that you have already produced to the Commission during its investigation leading to this litigation or by Letcavage during this litigation, provided You identify those documents by their Bates number.

2.  Under Rule 34(b)(2)(B), with respect to each numbered category of the Requests below, respond by either stating that You will produce such documents (by producing copies or producing originals for inspection and copying) or stating with specificity the grounds for objecting to the request, including the reasons.

3.  Under Rule 34(b)(2)(C), any objection You make to producing documents responsive to a numbered category below must state whether any responsive documents are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of (or You must produce) the remaining documents.

4.  For each document, or portion thereof, that You seek to withhold on the basis of any privilege or protection, provide a written response containing the information required by Rule 26(b)(5)(A) and Local Rule 26.2.

5.  Under Rule 34(b)(2)(E)(i), the Commission requests that You organize and label documents produced in response to the Requests to correspond to the Requests' numbered categories.

6.  The relevant period that applies to these Requests, unless otherwise stated, is December 1, 2011 through April 15, 2014 (the "Relevant Time Period").

7. These Requests are continuing. To the extent that You obtain information or documents that change or require correction or supplementation of Your responses to the Requests after You serve your responses on the Commission, You must promptly serve supplemental responses reflecting the new information and produce any additional documents, pursuant to Rule 26(e)(1).

## DOCUMENT REQUESTS

1. All accounting records (in electronic format, and for items for which electronic accounting records do not exist, all paper records) including but not limited to financial statements, profit and loss statements, general ledgers, trial balances, cash disbursement journals, cash receipt journals, adjusting journal entries, and records which support the information in the Financial Information section of Premier's: (i) Forms 10-K for year ended 2012; (ii) Form 10-K for year ended 2013, (iii) Form 10-Q for the quarterly period ending March 31, 2013; (iv) Form 10-Q for the quarterly period ending June 30, 2013; and (v) Form 10-Q for the quarterly period ending September 30, 2013 ("Filings"), including, for each of the Filings: the Condensed Consolidated Balance Sheets, Unaudited Condensed Consolidated Statements of Operations For the three and nine months prior, and Unaudited condensed Consolidated Statements of Cash Flows For the three and nine months prior, and any user name and password required to access the data.

2. All documents relating to the valuation of Premier, TPC, and WePower Ecolutions, including but not limited to: (i) the "diligence binder" that supports the TPC purchase price paid by Premier; and (ii) all documents relied upon by Premier to identify to Premier the number and value of the deregulated energy contracts in hand as of May 30, 2013.

3. Documents sufficient to identify the name, account number, and financial

institution of all bank and brokerage accounts in the name of, controlled by, or held on behalf of Premier, including but not limited to, JP Morgan Chase & Co. account numbers 451457993 and 181602283 (both Premier accounts), and 228002972 (an account of Premier subsidiary Energy Efficiency Experts).

4. All operating agreements, corporate resolutions, board meeting minutes, and documents relating to operating agreements, corporate resolutions, and board meetings of Premier.

5. Documents sufficient to identify any services provided by Premier and TPC.

6. All documents concerning the Premier press release dated May 30, 2013 entitled "Premier Holding Turnaround," including but not limited to:

    a. All documents concerning the "account[ing] for assets recently acquired from [TPC]."

    b. All documents concerning the "proper capitalization and valuation of assets acquired pursuant to the recent transaction."

    c. All documents concerning "Shareholders equity [of] $5,932,397... due primarily to the preliminary valuation of $4,500,000 I deregulated energy contracts from [TPC], and net income of $488,147."

    d. All documents concerning Your claim that "these deregulated energy contracts in hand today are worth approximately $20,000,000 if the company chose to sell them off in the deregulated energy markets."

    e. All documents concerning Your claim that TPC "continues to add 1,500 to 2,000 new contracts each month."

    f. All documents concerning the claim that "[t]he market value of these contacts at year end, December 31, 2013, should exceed $35,000,000 (if the company chose to sell them)."

    g. All documents concerning the value of "the commercial accounts being serviced by [TPC]."

    h. All documents concerning the $869,000 in revenue" obtained by Premier "from the disposition of the assets of WePower ... and the initiation of revenue generation in both Energy Efficiency Experts and [TPC]."

7. All documents concerning publicizing or marketing Premier ("Marketing Material"), including but not limited to all press releases, letters to investors, postings on all social media (including Twitter and Facebook), and postings on investor websites, which were disseminated in 2012 and 2013, including but not limited to the preparation or review of any such Marketing Material.

8. All documents concerning the preparation or review of any of the Premier documents filed with the U.S. Securities and Exchange Commission including but not limited to information sufficient to identify all persons involved with the drafting or review of those documents.

9. All documents concerning any compensation received by Letcavage (in any form) from Premier, including but not limited to all documents supporting compensation received by Letcavage from Premier (such as invoices, bills, and memoranda justifying the compensation).

10. All contracts, agreements, and arrangements between Letcavage and: (i) Premier, (ii) TPC, (iii) iCap; (iv) Green Central; (v) Nexalin; or (vi) WePower Eco Corp.

11. All documents concerning Doty Scott, including but not limited to all final and draft contracts, agreements, communications, reports, memoranda, and correspondence, with or concerning Doty Scott.

12. All documents that support the valuation figure of $869,000 of the note payable received by Premier in the WEPOWER Ecolutions Inc. sale to Donovan.

13. All documents concerning the negotiations between Premier and Donovan and others on behalf of Donovan regarding the sale of the product line and prospects of WePowerEco Corp. in exchange for an unsecured promissory note in the face amount of $5,000, 000.

14. All documents concerning the diligence undertaken by Premier regarding the collectability of the unsecured promissory note in the face amount of $5,000,000 received by Premier in exchange for the sale of the product line and prospects with WePowerEco Corp. as of: (i) December 31, 2012; and (ii) quarterly in 2013.

15. All documents relied upon by Premier in support of the following statement from Premier's Form 10-K for the fiscal year ended December 31, 2012: "Loss from discontinued operations of $756,912 for the year ended December 31, 2012 consisted of the losses from operations of our discontinued subsidiary, WEPOWER Ecolutions Inc."

16. All documents which support Premier's entry of $985,138 as its "Gain from sale of discontinued operations, net of income taxes" on Premier's Unaudited Consolidated Statements of Operations for the three month periods ended March 2013, from Premier's Form 10-Q for the quarterly period ended March 31, 2013.

17. All documents, including but not limited to all memoranda, emails, and other communications, concerning the accounting treatment for the sale of certain assets of WEPOWER Ecolutions Inc. in: (i) Premier's Form 10-K for the fiscal year ended December 31, 2012; and (ii) Premier's Form 10-Q for the quarterly period ended March 31, 2013.

18. All documents concerning Premier's goodwill impairment analysis quarterly from March 31, 2013 to December 31, 2013.

19. All documents concerning the following (from Premier's FY 2013 Form 10-K, Note 9 – Subsequent Events):

WePower LLC returned 5,000,000 common shares of the Company previously issued related to the sale of TPC, and in exchange for the promissory note in the face amount of $5,000,000 (and valued at 869,000 on the Company's financial statements as of December 31, 2013), the Company had returned an additional 2,500,000 common shares.

20. All of Premier's accounting policies, procedures, and any other accounting guidelines.

21. All documents concerning "sales lead generation" (as described in Note 6 – Related Party Transaction, in Premiers FY 2013 Form 10-K).

22. All documents concerning Premier private placements.

23. Documents reflecting all sums paid to employees of Nexalin by Premier or on Premier's behalf.

24. A schedule of all individuals receiving compensation for business referrals.

25. All day books, planners, and calendars.

26. Documents sufficient to identify:

    a. all investors in New York state;
    b. all TPC contracts with individuals in New York state;
    c. all press releases issued to potential investors in New York state;
    d. all materials issued to or sent to persons in New York state; and
    e. all services provided by persons or entities located in New York state.

Dated: New York, New York  
March 13, 2018

Securities and Exchange Commission

By: _____  
Bennett Ellenbogen

Howard Fischer  
Securities and Exchange Commission  
New York Regional Office  
200 Vesey Street, Suite 400  
New York, NY 10281  
(212) 336-0589 (Fischer)  
Email: ellenbogenb@sec.gov