REBECCA N. KAUFMAN, SBN 199534
rkaufman@be-law.com
BERGESON LLP
9350 Wilshire Boulevard, Suite 206
Beverly Hills, California 90212
Telephone: (310) 846-5257
Facsimile: (310) 432-5172

Attorneys for Defendants Premier Holding Corporation and Randall Letcavage

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER HOLDING CORPORATION, et al.,<br><br>Defendant. | Case No. 8:18-CV-00813-CJC-KESx<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT PURSUANT TO FED. R. CIV. P. 55(c)**<br><br>[Filed concurrently with Motion to Set Aside Entry of Default, Declarations in Support of Motion, (Proposed) Order, Proof of Service]<br><br>Hearing Date: Monday, March 23, 2020<br>Hearing Time: 1:30 p.m.<br>Judge: Hon. Cormac J. Carney<br>Courtroom.: 7C<br>Complaint Filed: December 4, 2017 |

Defendants PREMIER HOLDING CORPORATION and RANDALL LETCAVAGE respectfully submit this Memorandum of Points and Authorities in Support of Defendants' Motion to Set Aside Entry of Default.

# TABLE OF CONTENTS

I. Introduction. ............................................................................................... 1

II. Procedural History. ..................................................................................... 2

III. Facts. ........................................................................................................... 5

    A. Letcavage Suffered from a Head Injury During the Time Period Relevant to Default. ......................................................................... 5

    B. Defendants Lacked Legal Counsel During the Time Period Relevant to Default. ......................................................................... 6

IV. There is Good Cause for this Court to Set Aside the Entry of Default. ............ 7

    A. Defendants' Conduct was Not Culpable. ........................................... 8

        1. Health Issues Led to Default ................................................... 8

        2. Defendants' Lack of Representation Led to Default ................. 9

    B. Defendants have a Meritorious Defense to Plaintiff's Claims. ........... 10

    C. Plaintiff will not be Prejudiced if the Default is Set Aside .................. 12

V. Conclusion. ............................................................................................... 13

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT, Case No. 8:18-CV-00813-CJC-KESx

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000) .......... 13

*Bernal v. Rodriguez*, 2016 U.S. Dist. LEXIS 107208, *9, 2016 WL 4267942 (C.D. Cal.) ....................................................................................... 7, 10, 11

*Brady v. United States,* 211 F.3d 499, 504 (9th Cir. 2000) ......................................... 1

*Brandt v. Am. Bankers Ins. Co.*, 653 F.3d 1108, 1111-1112 (9th Cir. 2011) .............. 8

*Briones v. Riviera Hotel & Casino,* 116 F.3d 379, 382 (9th Cir. 1997) ..................... 9

*Direct Mail Specialists v. Eclat Computerized Techs.*, 840 F.2d 685, 690 (9th Cir. 1988) ........................................................................................................ 1

*Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001) .................................. 8

*Guan v. Deng*, 2014 U.S. Dist. LEXIS 46997, *24-26, 2014 WL 1347380 (N.D. Cal.) ................................................................................................. 9

*In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 702 (9th Cir. 2012) .......... 11

*Kendrick v. Pina,* 2013 U.S. Dist. LEXIS 68572, *9, 2013 WL 2102685 (E.D. Cal.) ........................................................................................................ 8

*Kim v. Wilmington Trust Co.*, 2017 U.S. Dist. LEXIS 210391, *8 (S.D. Cal.) .......... 9

*Leadership Studies, Inc. v. ReadyToManage, Inc.,* 2016 U.S. Dist. LEXIS 109476, *20, 2016 WL 4425713 (C.D. Cal.) ........................................ 8, 11, 13

*SEC v. Lee*, 2015 U.S. Dist. LEXIS 147007, *8 (C.D. Cal. 2015) ........................... 13

*TCI Grp. Life Ins. Plan v. Knoebber,* 244 F.3d 691, 696 (9th Cir. 2001) . 8, 10, 12, 13

*United States v. Signed Pers. Check No. 730*, 615 F.3d 1085, 1091 n.1 (9th Cir. 2010) .......................................................................................... 7, 8, 9, 10

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) ........... 11

**TREATISES**

Federal Rule of Civil Procedure 55(b)(2) ................................................................. 13

Federal Rule of Civil Procedure 55(c) ............................................................ 1, 4, 7, 8

Federal Rule of Civil Procedure 60(b) ................................................................... 7, 8

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT, Case No. 8:18-CV-00813-CJC-KESx

## I. Introduction.

Pursuant to Federal Rule of Civil Procedure 55(c), Defendants Premier Holding Corporation ("Premier") and Randall Letcavage ("Letcavage") (collectively "Defendants") request this Court to exercise its "especially broad" discretion and set aside its October 17, 2019 order entering default in favor of Plaintiff the Securities and Exchange Commission ("Plaintiff" or "SEC"). Fed. Rule Civ. Pro. 55(c); *Brady v. United States,* 211 F.3d 499, 504 (9th Cir. 2000). There is a strong preference for trial on the merits, and any doubts should be resolved in favor of setting aside the default. *Direct Mail Specialists v. Eclat Computerized Techs.*, 840 F.2d 685, 690 (9th Cir. 1988).

There is good cause to set aside the default because Defendants' conduct was not culpable given health issues and lack of legal representation. Letcavage, the CEO of Premier, suffered a head injury on July 30, 2019 that affected his ability to comply with this Court's order to retain counsel after Defendants' attorney withdrew. Consequently, Defendants were effectively without counsel when this Court ordered them on September 30, 2019 to find counsel or risk default (and they continued without counsel until February 12, 2020).

Moreover, Defendants have a meritorious defense to the substantive claims. At the heart of Plaintiff's case is the issue of whether Defendants fraudulently overvalued an asset. In their answer, Defendants aver they did not act with the degree of scienter required to create liability because they reasonably relied on accountants and a valuation firm for the appraisal. Moreover, there is evidence that the asset was accurately valued. If either issue is decided in favor of Defendants at trial, they will prevail in the litigation. Finally, Plaintiff will not be prejudiced if the default is set aside. Litigation will resume and the four-month loss will not hinder Plaintiff's case in any meaningful way.

## II. Procedural History.

Plaintiff's complaint was filed in this matter on December 4, 2017 (Docket 1), and Defendants filed their answer on June 22, 2018 (Docket 65), after their motion to dismiss was denied in part. (Docket 45). Letcavage sat through the first session of his deposition without incident. The parties agreed to set the second session of his deposition for August 28, 2019. (Docket 109 at 3:8-9). Before the second session, Letcavage sustained a head injury after falling in the shower on July 30, 2019. (Declaration of Dr. Mitchell Wainwright ("Wainwright Decl."), ¶ 3; Declaration of Randall Letcavage ("Letcavage Decl."), ¶ 4, Ex. A). Letcavage requested that Plaintiff continue his deposition for six weeks while he recovered, but the SEC refused. (Docket 111). Letcavage moved *ex parte* on August 26, 2019 for a protective order against being deposed two days later. (Docket 109 at 6:4-7) ("…Defendant is suffering from debilitating headaches, extreme fatigue, and great difficulty focusing and concentrating. Defendant believes that these symptoms are being caused by an earlier head injury."); (Docket 109 at 6:25-7:5) ("…Dr. Wensley confirmed that Defendant is suffering from debilitating headaches and extreme fatigue…that Defendant did in fact suffer a fall and injured his head 10 days ago…Defendant was precluded from working for a period of six weeks…").

Letcavage's motion for a protective order was denied because he failed to submit sufficient supporting evidence in the form of a declaration from a doctor or medical documents and because Letcavage was the landlord of the doctor who wrote a note stating Letcavage could not work for six weeks. (Docket 111 at 3). Importantly, the magistrate judge did not rule that Letcavage's injury was phony and he was malingering, but she nevertheless ordered him to appear at his deposition on August 28, 2019. (Docket 111). Letcavage appeared as ordered and responded under oath to several questions about his health, in which he described his fall, the resulting injuries (including a severe headache and confusion), and why it was difficult for him to sit through a deposition. (Docket 127-6 (8/28/19 Depo. Trans.)

at 11:5-15; 18:25-19:6; 26:3-15). Letcavage eventually declined to sit for further questioning that day because he was in such poor health:

> Letcavage: Guys, I'm sitting here. I came because I was ordered to. I'm asking – I'm answering your questions right now as best as I can, and I'm asking you to give me a break here, and we can do this –
>
> Vasilescu: We are going forward with the deposition.
>
> Letcavage: We are not. We're done. We are done, Jacob [Bach]. I'm not going to sit for this…I'm sorry. I don't want to get upset again and yell at anybody. I don't want to say anything that I'm going to regret, but I'm not going to continue. Thank you for your help.

(Docket 127-6 (8/28/19 Depo. Transcript) at 31:25-32:13).

Letcavage's counsel suggested continuing the deposition, when his client recovered: "[H]e's telling you he's not going to be able to give his best testimony…We want his best testimony. And I think if it's about the discovery cutoff, which Judge Scott mentioned yesterday, I'm more than willing to work with you guys on a new date and extend that." (Docket 127-6 (8/28/19 Depo. Transcript) at 30:7-15). Plaintiff did not agree to a continuance (*Id.* at 30:16-17) and did not file a motion to compel Letcavage to reappear. Instead, on September 20, 2019, Plaintiff filed a motion for sanctions to strike the answer and/or to preclude Defendants from putting forth evidence for violating the discovery orders, including Letcavage's failure to complete his deposition. (Docket 127). The Court denied Plaintiff's motion for sanctions without prejudice on October 22, 2019. (Docket 137).

Meanwhile, on September 30, 2019, the Court granted Defendants' attorney Joseph Bach's Motion to Withdraw as Counsel for Defendants, and the Court ordered that Defendants had until October 11, 2019 to either substitute counsel or confirm that their other attorney Barry Cohen would continue to represent them. (Docket 132). But, two weeks *prior* to the September 30 order, Cohen withdrew as limited scope counsel. (Docket 121 & 122) Because Premier could not represent

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT, Case No. 8:18-CV-00813-CJC-KESx

itself, Cohen agreed to a last appearance on October 30, 2019 representing Premier, as discussed below (Letcavage appeared *pro se*). (Docket 139) (Letcavage Decl., ¶ 23). Defendants were effectively without representation for four months until Bergeson LLP was retained on February 12, 2020.[1] (Letcavage Decl., ¶ 22).

On October 17, 2019, the Court entered default against Defendants for failure to defend and to comply with the Court's September 30, 2019 order to retain counsel. (Docket 135). Defendants nonetheless continued to engage in settlement discussions with Plaintiff and appeared telephonically before the Magistrate, Premier represented by Cohen and Letcavage *pro se*, on October 30, 2019 for a settlement conference. Docket 139. After that October 30 hearing, Cohen no longer acted as counsel for Defendants.[2] (Letcavage Decl., ¶ 23).

On January 15, 2020, the SEC filed its remedies motion, which included proposed final judgments against Defendants. (Docket 147). On February 10, 2020, Plaintiff filed its reply in support of motion for remedies. (Docket 148). The next day, on February 11, 2020, Defendants contacted Bergeson LLP, and they retained the firm on February 12, 2020. (Declaration of Rebecca N. Kaufman ("Kaufman Decl."), ¶ 2). Counsel for Defendants contacted Plaintiff's counsel the day the firm was retained, and she requested the SEC to stipulate to relief from default and/or continue its remedies motion until after Defendants' forthcoming Rule 55(c) motion is heard. *Id.* at 3. Plaintiff denied both requests. *Id.* Accordingly, a week after meeting and conferring with Plaintiff (L.R. 7-3), Defendants move this Court for an order granting relief from default pursuant to Federal Rule of Civil Procedure 55(c).

---

[1] Bergeson LLP concurrently files its Notice of Appearance with this Motion for Relief from Entry of Default.

[2] On September 17, 2019, the Court issued a notice to Cohen regarding his failure to file and lodge a proposed order with his motion to withdraw pursuant to Local Rules 52-4.1 and 5-4.4.1. (Docket 124). Cohen never filed the proposed order.

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT, Case No. 8:18-CV-00813-CJC-KESx

## III. Facts.

### A. Letcavage Suffered from a Head Injury During the Time Period Relevant to Default.

On or about July 30, 2019, Mr. Letcavage fell while taking a shower and hit his head on the hard shower surface. (Letcavage Decl., ¶ 4, Ex. A). He visited his long-time physician later that day, Dr. Mitchell Wainwright, and informed him that he sustained a head injury earlier that day when he slipped and hit his head in the shower. (Wainwright Decl., ¶ 3; Letcavage Decl., ¶ 6). During the appointment, Dr. Wainwright examined Mr. Letcavage, confirmed his head injury, and was concerned about the injury due to the numerous previous concussions he sustained playing football. (Wainwright Decl., ¶ 4). Dr. Wainwright understood that Mr. Letcavage started playing football at age nine, and he sustained his first concussion in the game at age twelve. (*Id.*; Letcavage Decl., ¶ 7). Mr. Letcavage also reported to his doctor that he had suffered two or three more concussions as a high school football player, and several more while playing football in college—including one severe enough to cause a two-hour blackout. (Wainwright Decl., ¶ 4; Letcavage Decl., ¶ 7).

Mr. Letcavage also reported he was paralyzed on his left side for a period of time after hitting his head in the shower and also complained of headaches, dizziness and confusion. (Wainwright Decl., ¶ 5; Letcavage Decl., ¶ 5). Dr. Wainwright advised Mr. Letcavage to get a MRI, which he did the next day, July 31, 2019, with another physician. (Wainwright Decl., ¶ 6). Dr. Wainwright further advised Mr. Letcavage to take it easy and not to overexert himself. (*Id.*) Based on Dr. Wainwright's examination of Mr. Letcavage on July 30, 2019, the symptoms Mr. Letcavage reported, as well as a review of his medical records, Dr. Wainwright diagnosed Mr. Letcavage as having suffered a concussion and traumatic brain injury attributed to his fall in the shower, which were exacerbated by Mr. Letcavage's previous head trauma. (*Id.* at 7). Because of his injury and persistent symptoms, Mr. Letcavage was unable to complete his August 30, 2019 deposition. (Letcavage

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT, Case No. 8:18-CV-00813-CJC-KESx

Decl., ¶ 26).

Mr. Letcavage returned to Dr. Wainwright's office for two follow-up examinations, on November 13, 2019 and February 14, 2020. (Wainwright Decl., ¶ 9; Letcavage Decl., ¶ 10). During the November 2019 appointment, Mr. Letcavage informed Dr. Wainwright he was unable to consistently and effectively attend to his business responsibilities because of his symptoms from the accident, including: headaches, dizziness, fatigue, loss of concentration, significant memory loss, anxiety, and irritability. (Wainwright Decl., ¶ 8; Letcavage Decl., ¶ 11). Later, during the February 2020 appointment, Mr. Letcavage reported that, although he was still periodically experiencing symptoms from his fall in the shower, they started to abate in mid-January, he was feeling a bit better, and resumed some of his business duties. (Wainwright Decl., ¶ 11; Letcavage Decl., ¶ 14). During that February 2020 appointment, Dr. Wainwright diagnosed Mr. Letcavage with traumatic brain injury and Post-Concussion Syndrome. (Wainwright Decl., ¶ 12).

### B. Defendants Lacked Legal Counsel During the Time Period Relevant to Default.

Letcavage is the CEO and only director of Premier, a publicly-held, "micro-cap" entity with only one full-time administrative employee, office manager Megan Bradshaw. (Letcavage Decl., ¶ 3; Declaration of Megan Bradshaw ("Bradshaw Decl."), ¶¶ 2-3). Letcavage is the only person at Premier with the authority to make executive decisions for the company such as decisions relating to legal matters and litigation, including the retention of legal counsel. (Letcavage Decl., ¶ 18; Bradshaw Decl. ¶¶ 3, 8-9).

Letcavage's head injury rendered him unable to consistently and effectively attend to his executive duties and responsibilities during the period from July 30, 2019 until approximately mid-January. (Letcavage Decl., ¶ 18; Bradshaw Decl., ¶¶ 5, 7). Accordingly, he does not recall receiving notice from his former attorney Jacob Bach, wherein Bach conveyed the Court's September 30, 2019 order and

6

explained the consequences of not obtaining counsel. (Letcavage Decl., ¶¶ 18-19.) Regardless, the injury also rendered Letcavage unable to effectively (a) understand the consequences of not obtaining counsel and violating the Court's order and (b) retain counsel in 11 days. (*Id.* at 20-21). Defendants, therefore, were without counsel from September 30, 2019 to February 12, 2020—except when Barry Cohen appeared telephonically, on a limited basis, for Premier at the October 30, 2019 settlement conference (as Premier could not appear *pro se*). (*Id.* at 22-23). Letcavage has no memory of ever discussing the Court's September 30, 2019 order with Cohen. (*Id.* at 23).

### IV. There is Good Cause for this Court to Set Aside the Entry of Default.

Federal Rule of Civil Procedure 55(c) provides that a court may set aside an entry of default for "good cause." Fed. R. Civ. P. 55(c). "[D]efault is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Bernal v. Rodriguez*, 2016 U.S. Dist. LEXIS 107208, *9, 2016 WL 4267942 (C.D. Cal.) (citation omitted). "When a party seeking timely relief from default has a meritorious defense, 'doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits.'" *Id.* (citation omitted). Courts have broad discretion to overturn an entry of default and this discretion is "more liberally applied" where a defendant seeks to set aside an entry of default pursuant to Rule 55(c) rather than a default judgment pursuant to Rule 60(b). *Id.* (citing *United States v. Signed Pers. Check No. 730*, 615 F.3d 1085, 1091 n.1 (9th Cir. 2010) (noting that this level of liberality is applied "because in the Rule 55 context there is no interest in the finality of the judgment with which to contend")).

On a Rule 55(c) motion, the court considers the following three factors: (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether setting aside the default judgment would prejudice the plaintiff. *TCI Grp. Life Ins. Plan v. Knoebber,* 244

F.3d 691, 696 (9th Cir. 2001) ("*TCI*"), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001).

### A.  Defendants' Conduct was Not Culpable.

Defendants' conduct leading to the entry of default judgment was not culpable because of health problems and lack of representation. "A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and ***intentionally*** failed to answer." *Signed Pers. Check No.*, 615 F.3d 1085, 1092 (9th Cir. 2010) (emphasis added and citation omitted). "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer." *Id*.

Culpable conduct is refuted by a defendant's "credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *TCI*, 244 F.3d at 697-698.  ***A finding of culpability, however, is not dispositive of a defendant's Rule 55(c) application***.  See *Brandt v. Am. Bankers Ins. Co*., 653 F.3d 1108, 1111-1112 (9th Cir. 2011) (emphasis added); *see also Leadership Studies, Inc. v. ReadyToManage, Inc.,* 2016 U.S. Dist. LEXIS 109476, *20, 2016 WL 4425713 (C.D. Cal.) ("even if defendants' conduct was culpable, this case is best decided on the merits").

#### 1.  Health Issues Led to Default

"The ***defendant's or counsel's physical or mental illness*** is a common ground for finding conduct non-culpable when considering whether to lift a default judgment."[3]  *TCI*, 244 F.3d at 698 n. 5 (emphasis added); *see also Kendrick v. Pina,* 2013 U.S. Dist. LEXIS 68572, *9, 2013 WL 2102685 (E.D. Cal.) (excusable neglect due to defendant's homelessness and mental illness supported relief from default

---

[3] The Ninth Circuit has clarified that the standards for Rule 55(c)'s "good cause" and Rule 60(b)'s "mistake" or "excusable neglect" are coextensive. *TCI*, 244 F.3d at 696.

judgment); *Guan v. Deng*, 2014 U.S. Dist. LEXIS 46997, *24-26, 2014 WL 1347380 (N.D. Cal.) (entry of default set aside for defendants injured following a boating accident).

Here, Letcavage suffered a severe head injury and was diagnosed with traumatic brain injury and Post-Concussion Syndrome. He informed this Court about his head injury in August 2019, when he attempted to postpone his deposition while he recovered from his accident. And, his symptoms persisted long after the August 30, 2019 deposition, preventing him (on behalf of himself and Premier) from following this Court's September 30, 2019 order to retain counsel and from moving earlier to set aside the October 17, 2019 entry of default.

2. <u>Defendants' Lack of Representation Led to Default</u>

The Ninth Circuit's rules for determining when a default should be set aside are "solicitous towards movants, especially those whose actions leading to the default were taken without the benefit of legal representation." *Signed Pers. Check No. 730*, 615 F.3d at 1089; *see also Briones v. Riviera Hotel & Casino,* 116 F.3d 379, 382 (9th Cir. 1997) (omissions of a *pro se* defendant may also constitute excusable neglect). Moreover, a failure to respond is not deemed culpable behavior in light of "an unintentional breakdown of the normal procedure by which [a defendant] secures its representation in litigation." *See Kim v. Wilmington Trust Co.*, 2017 U.S. Dist. LEXIS 210391, *8 (S.D. Cal.).

While it is true in the instant action that Defendants have had several attorneys appear on their behalf who later withdrew, the fact remains Defendants effectively had no counsel to help them avoid default at the relevant time or more quickly challenge its entry. When this Court ordered Defendants to replace their counsel or risk default, Defendants' only attorney, Cohen, had already filed his motion to withdraw. (Docket 122 & 132). Although Cohen appeared telephonically at the October 30, 2019 settlement conference, he did so on a limited basis. He did no work for Defendants after he filed his motion to withdraw (September 17, 2019)

up until he appeared telephonically (October 30, 2019). Accordingly, from the time this Court warned Defendants on September 30, 2019 that they were at risk of default, to the time when this Court entered default on October 17, 2019, and up until Defendants' February 2020 retention of Bergeson LLP, Defendants were effectively without legal counsel.

***

Defendants had no intent to gain an advantage over Plaintiff or to delay legal proceedings. Because Defendants' failure to respond to the Court's September 30, 2019 order was unintentional, the Court should find that Defendants' conduct was not culpable.

### B. Defendants have a Meritorious Defense to Plaintiff's Claims.

A party in default "is required to make some showing of a meritorious defense as a prerequisite to vacating an entry of default." *Bernal v. Rodriguez*, 2016 U.S. Dist. LEXIS 107208, *10, 2016 WL 4267942 (C.D. Cal.) *10 (citation omitted). The burden on a party seeking to vacate a default judgment "is not extraordinarily heavy." *TCI Group*, 244 F.3d at 700 (citation omitted). "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default. . . . Rather, that question would be the subject of the later litigation." *U.S. v. Signed Personal Check No. 730*, 615 F.3d 1085, 1094 (9th Cir. 2010) (citations omitted).

If a court determines "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default" then it cannot concurrently conclude that permitting the reopening of the case will cause needless delay and expense to the parties and court system. *See Bernal v. Rodriguez* at *10 (citation omitted). In *Bernal v. Rodriquez*, the court determined that defendants sufficiently demonstrated a meritorious defense to justify relief from default in their

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT, Case No. 8:18-CV-00813-CJC-KESx

answers, which the court described as "admittedly limited in their recitation of specific facts, but that nonetheless assert[ed] (albeit in generalized terms) several affirmative defenses." *Id.* at *10 (parenthetical in original). It was enough, the *Bernal* Court wrote, that "at least 'some' such possibility exists" that the results of a trial would be contrary to the result achieved by default. *Id.*; *see also Leadership Studies, Inc. v. ReadyToManage, Inc.*, 2016 U.S. Dist. LEXIS 109476, *21-22, 2016 WL 4425713 (C.D. Cal.) (standard satisfied by defendants' proposed answers—which the court described as "admittedly limited in their recitation of specific facts, but they nonetheless assert[ed] (albeit in generalized terms) several affirmative defenses) (citation omitted and parenthetical in original).

Here, as in *Bernal v. Rodriquez* and *Leadership Studies, Inc. v. ReadyToManage, Inc.*, Defendants each filed answers that assert several affirmative defenses, most importantly that Defendants did not act with the requisite degree of scienter necessary to create liability because they reasonably relied on accountants and a valuation firm with respect to a note that the SEC claims Defendants fraudulently overvalued. (Docket 1 at ¶ 3 (Plaintiff's allegations); Docket 65 at 9:15-11:6 (Defendants' defenses and affirmative defenses)).

Scienter includes both intent to mislead and "deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (citation omitted). Deliberate recklessness is "a form of intentional or knowing misconduct" in which the "danger of misleading buyers or sellers . . . is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* (citation omitted). The "ultimate question is whether the defendant knew his or her statements were false, or was consciously reckless as to their truth or falsity." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 702 (9th Cir. 2012) (citation omitted). If Defendants prevail on their defense of no scienter, the outcome would be contrary to the result achieved by default.

Moreover, the accountant who audited Premier during the relevant time

11

period has sworn, and will testify at trial, that the valuation of the note at issue was accurate and proper under both U.S. GAAP and GAAS standards. (Declaration of Gregory Wahl ("Wahl Decl."), ¶¶ 3-5). Moreover, he has sworn, and will testify at trial, that Premier was duly diligent in obtaining a reasonable basis for its valuation because: (a) Premier obtained an independent third-party valuation of the note; (b) Premier's board of directors confirmed its initial valuation in a board resolution granting 5,000,000 shares at $0.18 (or $900,000); (c) the $5,000,000 note was heavily discounted by 83%; (d) the note transaction was a non-routine, related-party transaction that was separately disclosed for shareholders to review and appropriately recorded in discontinued operations (i.e. the Wind Power Business WePower, Inc. was disposed of and consideration for disposition was the $5,000,000 note), and the settlement of the note was recorded in equity (i.e. the shares were returned to the treasury); (e) Premier's proper valuation of the note was also subsequently corroborated when Premier later transferred the note to Marvin Winkler, one of its shareholders, in exchange for return of 7,500,000 shares, which was confirmed by the Compromise Agreement (signed on March 4, 2014), the disclosures in the 2013 Form 10-K, and subsequently revised disclosures in the 2014 Form 10-K. (*Id.* at 7; Letcavage Decl., ¶ 22). Further, Premier's valuation of the note benefited Premier shareholders by increasing share value by returning 7,500,000 shares to the treasury. (Wahl Decl., ¶ 7; Letcavage Decl., ¶ 22).

If Defendants prevail on their defense that the valuation was accurate and proper, the outcome would be contrary to the result achieved by default. Therefore, Defendants have satisfied the second good cause factor for meritorious defense.

### C. **Plaintiff will not be Prejudiced if the Default is Set Aside.**

To be prejudicial, the setting aside of the default must result in greater harm than simply delaying resolution of the case or the ordinary cost of litigating. *TCI*, 244 F.3d at 701. That a party may be denied a quick victory is not sufficient to deny relief from entry of default. *Bateman v. United States Postal Serv.*, 231 F.3d 1220,

1225 (9th Cir. 2000).  Setting aside the default must cause a plaintiff "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI* at 701 (citation omitted).  For example, in ruling on a SEC's Rule 55(b)(2) motion to enter default judgment, the court found the SEC had no other recourse but default because a major defendant was incarcerated in South Korea and the other defendants indicated they would not appear.  *SEC v. Lee*, 2015 U.S. Dist. LEXIS 147007, *8 (C.D. Cal. 2015).

      Here, the SEC faces no prejudice if the entry of default is lifted.  Unlike the challenges facing the plaintiff in *SEC v. Lee*, 2015 U.S. Dist. LEXIS 147007, *8 (C.D. Cal. 2015), setting aside the default would not hinder the SEC's ability to pursue its claims.  Other than forcing Plaintiff to litigate its claims on the merits—which "cannot be considered prejudicial for purposes of lifting a default judgment" (*TCI*, 244 F.3d at 701)—reopening the case would have no ill effects.  Entry of default was entered only four months ago.  Plaintiff expended no time or money in moving for default because the Court did so on its own order.  Although Plaintiff spent time and money moving for default judgment (Docket 147), that can be remedied with the payment of related fees incurred by Plaintiff.  *See, e.g., Leadership Studies, Inc.*, 2016 U.S. Dist. LEXIS 109476, *23.  Furthermore, Letcavage will agree to be deposed to avoid Plaintiff's having to revive its September 20, 2019 motion for sanctions based on his decision to leave the August 30, 2019 deposition.  (Docket 147 & 148).

## V. **Conclusion.**

      Defendants are ready and willing to litigate Plaintiff's claims.  Defendants' failure to respond to the Court's September 30, 2019 order was not culpable, they have a meritorious defense to Plaintiff's claims, and Plaintiff will not suffer prejudice in pursuing its claims if default is set aside.  Every factor weighs in favor of lifting the entry of default and allowing the case to continue on the merits.  This Court should grant Defendants' motion.

1 | Dated: February 20, 2020      BERGESON LLP

By:    /s/ Rebecca N. Kaufman
         Rebecca N. Kaufman

Attorneys for Defendants Premier Holding Corporation and Randall Letcavage

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 9350 Wilshire Boulevard, Suite 206, Beverly Hills, CA 90212.

On February 21, 2020, I served true copies of the following document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT PURSUANT TO FED. R. CIV. P. 55(c)** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Bergeson LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Beverly Hills, California.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address abilson@be-law.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 21, 2020, at Beverly Hills, California.

/s/ Bilson, Andrew
Bilson, Andrew

**SERVICE LIST**
**SECURITIES AND EXCHANGE COMMISSION v. PREMIER HOLDING CORPORATION, et al.**
**Case No. CV 18-00813-CJC(KESx)**

**Bennett Ellenbogen (served by CM/ECF only)**
**Howard A Fischer (served by CM/ECF only)**
**Neal Jacobson (served by CM/ECF only)**
**Alexander M Vasilescu (served by CM/ECF only)**
US Securities and Exchange Commission
New York Regional Office
200 Vesey Street Suite 400
New York, NY 10281
212-336-0062
212-336-1322 (fax)

Joseph Greenblatt
1701 Brookshire Ave.
Tustin, CA 92780-6642
By Email: jboatjoe@yahoo.com
(served by Email and US Mail)

*Pro Se*

**Amy J Longo (served by CM/ECF only)**
US Securities and Exchange Commission
Los Angeles Regional Office
444 South Flower Street Suite 900
Los Angeles, CA 90071
323-965-3998
213-443-1904 (fax)
longoa@sec.gov

*Attorneys for Plaintiff Securities and Exchange Commission*