FILED
CLERK, U.S. DISTRICT COURT

1/20/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: CW DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

    v.

PREMIER HOLDING CORPORATION, RANDALL LETCAVAGE, and JOSEPH GREENBLATT,

    Defendants.

Case No.: SACV 18-00813-CJC(KESx)

**ORDER GRANTING PLAINTIFF'S MOTION FOR RELIEF AGAINST DEFENDANTS PREMIER HOLDING CORPORATION AND RANDALL LETCAVAGE [Dkt. 213]**

## I. INTRODUCTION

Plaintiff Securities and Exchange Commission ("SEC") brought this enforcement action against Defendants Premier Holding Corporation ("Premier"), Randall Letcavage ("Letcavage"), and Joseph Greenblatt ("Greenblatt"). (Dkt. 1 [Complaint, hereinafter "Compl."].) Now before the Court is the SEC's motion for relief against the Defendants.

(Dkt. 213-1 [hereinafter, "Mot."].) For the following reasons, that motion is **GRANTED** as to Premier and Randall Letcavage.[1]

## II. BACKGROUND

On December 10, 2019, the Court granted the SEC's motion for summary judgment against Greenblatt, finding Greenblatt liable for (1) aiding and abetting Premier's violations of the antifraud provisions of Sections 17(a)(2) and 17(a)(3) of the Securities Act, (2) aiding and abetting Premier's violations of Section 13(a) of the Exchange Act and Rule 13a-1, 13a-11, and 13a-14 thereunder, (3) aiding and abetting Premier's violations of Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act pursuant to Section 20(e) of the Exchange Act, and (4) violating Section 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder. (Dkt. 146.)

On November 30, 2020, the Court granted the SEC's motion for summary judgment against Letcavage and Premier. (Dkt. 208 ["November 30 Order"].) In that order, the Court found Premier and Letcavage liable for (1) violating Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, and (2) Section 17(a) of the Securities Act of 1933 ("Securities Act"). (*Id.*) In its November 30 Order, the Court found a permanent injunction barring Letcavage and Premier from future antifraud statute violations and an officer and director bar and penny stock bar against Letcavage were appropriate. (November 30 Order at 20–23.)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for January 25, 2021, at 1:30 p.m. is hereby vacated and off calendar.

Now before the Court is the SEC's motion for relief against Defendants.[2] (Mot.) The SEC seeks additional permanent injunctions, disgorgement and prejudgment interest, and maximum civil penalties. (*Id.* at 1.)

## III. DISCUSSION

The SEC seeks (1) final judgments imposing permanent injunctions against Premier and Letcavage, (2) final judgments directing each Defendant to pay disgorgement and prejudgment interest and holding Premier and Letcavage jointly and severally liable, and (3) final judgments imposing against each Defendant civil penalties of $1 million against Premier and $1 million against Letcavage.

### A. Permanent Injunctions

In addition to the permanent injunctions against Letcavage and Premier for violating Section 10(b) and Rule 10b-5 of the Exchange Act and Section 17(a) of the Securities Act, the SEC seeks permanent injunctions barring them from violating the books and records, accounting controls, and filings statutes: Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Section 13(a) of the Exchange Act and Rules 13a-1, 13a-11, and 13a-13. (Mot. at 11.)

Section 13(b)(2)(A) of the Exchange Act requires issuers to "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer," 15 U.S.C. § 78m(b)(2)(A),

---

[2] According to the SEC, Greenblatt is currently hospitalized and incapacitated. (Dkt. 218 at 1 n.1.) The SEC has reached an agreement with Greenblatt's attorney, Tom Noto, for an extension regarding Greenblatt's response to the instant motion. (*Id.*) Mr. Noto has informed the SEC that he intends to file a notice of appearance and then a joint stipulation and proposed order concerning the proposed extension. (*Id.*) Accordingly, the Court will only address the SEC's motion as to Premier and Letcavage.

Section 13(b)(2)(B) requires an issuer to have proper accounting controls, *id.* § 78m(b)(2)(B), and Section 13(a) and Rules 13a-1, 13a-11, and 13a-13 require filings with the SEC to be complete, accurate and timely, *id.* § 78m(a); *see Ponce v. SEC*, 345 F.3d 722, 734 (9th Cir. 2003).

Given that the Court found that Letcavage and Premier violated the antifraud statutes by materially misrepresenting the value of the WePower note on Premier's financial statement and Forms 10-K and 10-Q, (November 30 Order at 14–15), as well as omitting disclosure of Letcavage's salary, contract, and additional perks, (*id.* at 16), Sections 13(b)(2)(A), 13(b)(2)(B), 13(a) and Rules 13a-1, 13a-11, and 13a-13 were violated.

The Court may issue an injunction if there is a reasonable likelihood that the defendant will violate the securities laws again in the future. *See SEC v. Fehn*, 97 F.3d 1276, 1295 (9th Cir. 1996). In "predicting the likelihood of future violations," courts consider factors including "(1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; (5) and the sincerity of his assurances against future violations." *Id.* at 1295–96 (quoting *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980)).

As the Court noted in its November 30 Order, Letcavage and Premier acted with a high degree of scienter, violated the securities laws multiple times in multiple SEC filings and communications with investors, never recognized the wrongful nature of their conduct, and failed to provide any evidence which would suggest that future violations are unlikely. (November 30 Order at 21.) Accordingly, permanent injunctions barring Letcavage and Premier from violating Sections 13(b)(2)(A) and 13(b)(2)(B) of the

Exchange Act and Section 13(a) of the Exchange Act and Rules 13a-1, 13a-11, and 13a-13 are appropriate.

### B. Disgorgement

The SEC seeks an order of disgorgement, jointly and severally, for Letcavage's and Premier's ill-gotten gains in the amount of $6,880,111 plus prejudgment interest in the amount of $1,811,389.41 for a total disgorgement of $8,691,500.41. (Mot. at 19.)

The SEC may seek disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims" under 15 U.S.C. § 78u(d)(5). *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020). "Disgorgement need be 'only a reasonable approximation of profits causally connected to the violation.'" *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998)). Joint and several liability may be imposed "for partners engaged in concerted wrongdoing." *Liu*, 140 S. Ct. at 1949.

The SEC seeks disgorgement of $6,880,111 representing the total investments Premier and Letcavage raised from December 5, 2012 through May 20, 2015—the period during which the company made material misstatements to the public—so that it may return those funds to the defrauded investors. (Mot. at 17; Dkt. 213-2 [Declaration of Bennett Ellenbogen, hereinafter "Ellenbogen Decl."] ¶¶ 23–25, 42–43.) According to the SEC's evidence, Premier and Letcavage raised $2,998,095 from December 2012 through 2013, $3,270,351 in 2014, and $611,665 in 2015 (until the May 20, 2015 first quarter disclosure). (Ellenbogen Decl. ¶ 25; *see* Dkt. 192-66.) Defendants fail to produce evidence showing what they did with the nearly $7 million they fraudulently raised from investors or whether any of that money went to legitimate business expenses. (Ellenbogen Decl. ¶¶ 32–37.) Accordingly, the total amount raised from investors of

$6,880,111 represents Premier's and Letcavage's ill-gotten gains and is subject to disgorgement.

Letcavage has not "suggest[ed] that [his and Premier's] finances were not commingled . . . or that other circumstances would render a joint-and-several disgorgement order unjust." *Liu*, 140 S. Ct. at 1949 (citation omitted).  He was Premier's primary, if not only, decision maker as Chairman, President, CEO, and CFO.  (Dkt. 192-2 ¶¶ 5, 9, 10, 14, 45, 50.)  He paid himself significant compensation and perks even though the company had few assets and little business revenue.  (*See* Ellenbogen Decl. ¶¶ 28–32.)  He has refused to answer any questions regarding Premier and has failed to file audited financial papers for Premier since 2017.  (*Id.* ¶¶ 33–34 & n.11.)  Throughout discovery, Premier failed to produce books and records showing that Letcavage kept his own private payments separate from Premier's.  (*Id.* ¶¶ 32–37.)  Because Letcavage completely controls Premier, joint and several liability between Premier and Letcavage is warranted.  *See Hateley v. SEC*, 8 F.3d 653, 656 (9th Cir. 1993) (joint and several liability is appropriate between defendants who were controlled or controlling persons); *see also First Pac. Bancorp*, 142 F.3d at 1191–92 (joint and several liability appropriate where codefendants had a "close relationship").

The SEC also seeks prejudgment interest imposed on Premier and Letcavage, determined by 26 U.S.C. § 6621(a)(2), the interest used by the Internal Revenue Service to calculate underpayment penalties.  (Mot. at 19; Ellenbogen Decl. ¶¶ 26–27.)  "The ill-gotten gains include prejudgment interest to ensure that the wrongdoer does not profit from the illegal activity." *SEC v. Cross Fin. Servs.*, 908 F. Supp. 718, 734 (C.D. Cal. 1995).  The Ninth Circuit approved the calculation of prejudgment interest based on the tax underpayment rate set forth in 26 U.S.C. § 6621(a)(2) on a disgorgement order sought by the SEC in a civil enforcement action.  *Platforms Wireless*, 617 F.3d at 1099.

Here, the SEC calculated the amount of prejudgment interest to be $1,811,389.41 from May 20, 2015 to December 31, 2020. (Ellenbogen Decl. ¶¶ 25–27, Ex. 9.) Accordingly, the Court grants the SEC's request for an order of disgorgement, jointly and severally, against Premier and Letcavage in the amount of $6,880,111. Defendants shall also pay prejudgment interest which totals $1,811,389.41. The total amount of disgorgement and prejudgment interest assessed jointly and severally against Premier and Letcavage is $8,691,500.41.

### C.     Civil Penalties

The SEC requests that the Court impose third-tier civil penalties on Premier and Letcavage of $1 million each. Third-tier penalties are proper when the violation (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement and (2) directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons. 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). Third-tier civil penalties may be calculated either by multiplying a defendant's violations by a dollar amount or imposing a flat penalty equal to a defendant's gross pecuniary gain. *Id.*

Because civil penalties, like permanent injunctions, are imposed to deter the wrongdoer from similar conduct in the future, courts frequently apply the *Murphy* factors for permanent injunctions when assessing civil penalties. *See SEC v. Blockvest, LLC*, 2020 WL 7488067, at *5 (S.D. Cal. Dec. 15, 2020). The Court has imposed permanent injunctions and considered the factors in *Murphy*, finding that Premier's and Letcavage's violations were repeated and committed with a high degree of scienter, that Letcavage has failed to recognize the wrongfulness of his conduct, and that neither Premier nor Letcavage has provided any assurances that future violations will not occur. *See infra* III.A; (November 30 Order at 21). Like the permanent injunctions, the civil penalties the

SEC seeks are appropriate. A $1 million penalty each for Premier and Letcavage is not excessive considering the nearly $7 million in ill-gotten gains they fraudulently raised from investors.

## IV.  CONCLUSION

For the foregoing reasons, the SEC's motion for relief is **GRANTED** as to Premier and Letcavage. The Court **DEFERS** ruling on this motion with regards to Greenblatt until his opposition is submitted. Judgments consistent with this order and the Court's November 30 Order will issue concurrently.

DATED: January 20, 2021

HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE