**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-00813 CJC (KES) Date: September 7, 2021

Title: SECURITIES AND EXCHANGE COMMISSION v. PREMIER HOLDING CORP. and RANDALL LETCAVAGE

PRESENT:

THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):** **Order GRANTING Plaintiff's Motion to Compel (Dkt. 247)**

## I. Background.

On January 20, 2021, the Court entered judgment against Premier Holding Corp. and Randall Letcavage (collectively, "Defendants") and ordered them *inter alia* to pay $6,880,111, jointly and severally, together with prejudgment interest of $1,811,389.41, to the Securities and Exchange Commission ("Plaintiff" or "Commission"). (Dkt. 220, 221.) The Court also ordered Premier and Letcavage to each pay a $1 million civil penalty.[1] (Dkt. 220, 221.) The case arose out of a fraudulent scheme by microcap issuer Premier, at the direction of Premier's former CEO Letcavage,[2] to mislead investors about Premier's success and prospects, hide Premier's losses, inflate its assets, and artificially prop up its stock prices. (Dkt. 1 ["Complaint"] ¶¶ 1–3.)

On February 24, 2021, after Defendants failed to pay any of the amount owed, the Commission served Post-Judgment Document Requests on each Defendant. (Dkt. 247-3 ["Ellenbogen Decl."] ¶ 11 & Exs. 1–2 ["Requests"].) Defendants responded to the

[1] On April 4, 2021, the Court entered an Order dismissing Plaintiff's claim as to Defendant Joseph Greenblatt, who died in January 2021. (Dkt. 240.)

[2] Premier's current CEO is Scott Dinsmoor. (Dkt. 247-2 at 17.)

Requests on March 12, 2021, generally objecting to each Request and producing no documents. (Ellenbogen Decl. ¶ 18 & Exs. 9–10.)

After multiple conversations among the parties failed to resolve any of their disputes, the Commission filed its Motion to Compel Production of Documents and for an Accounting on July 15, 2021. (Dkt. 247.) The Commission seeks an order requiring Defendants to produce all documents responsive to the Requests and to submit a detailed accounting.[3] (Dkt. 247-2 at 14.) On August 5, 2021, Letcavage filed his opposition. (Dkt. 249.) Premier did not file any opposition.[4] On August 12, 2021, Plaintiff filed its Reply. (Dkt. 250.) A telephonic hearing was held on August 26, 2021. (Dkt. 251.) For the reasons discussed below, the Motion is **GRANTED**.

## II. Rules Governing Post Judgment Discovery.

Rule 69 of the Federal Rules of Civil Procedure provides that "[i]n aid of the judgment or execution, the judgment creditor … may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). "The purpose of the postjudgment proceedings is to discover assets that might be available to satisfy the judgment, and, following discovery, to execute on those assets." JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co., 707 F.3d 853, 868 (7th Cir. 2013); see Ryan Inv. Corp. v. Pedregal de Cabo San Lucas, No. C 06-3219, 2009 U.S. Dist. LEXIS 118337, at *3, 2009 WL 5114077, at *1 (N.D. Cal. Dec. 18, 2009) (post-judgment discovery may be used "to identify assets that can be used to satisfy a judgment" and "to discover concealed or fraudulently transferred assets") (citations omitted). The Supreme Court stresses that the scope of post-judgment discovery is "quite permissive." Republic of Argentina v. NML Capital, Ltd., 573 U.S. 134, 138 (2014). "Even though Rule 69 discovery may resemble the proverbial fishing expedition, a judgment creditor is *entitled* to fish for assets of the judgment debtor." Textron Fin. Corp. v. Gallegos, 2016 U.S. Dist. LEXIS 100407, at *8, 2016 WL 4077505, at *3 (S.D. Cal. Aug. 1, 2016) (citation omitted). Indeed, "[a] judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." Sequoia Prop. & Equip. Ltd. P'ship v.

---

[3] On July 16, 2021, Letcavage served supplemental responses to 3 of the 24 Requests. (Dkt. 249-1 at 9–11.) On August 5, 2021, Letcavage served additional supplemental responses to the Requests and produced a "small handful" of documents. (Id. at 15–29; Dkt. 250 at 4.)

[4] On March 26, 2021, the Court granted former counsel's request to withdraw from representing Defendants. (Dkt. 235.) On June 3, 2021, attorney Phillip G. Trad entered an appearance on behalf of Letcavage. (Dkt. 245.) As of the date of this Order, Premier has not retained new counsel. A copy of Plaintiff's Motion and Reply were served on Premier's current CEO. (Dkt. 247-2 at 17; Dkt. 250 at 12.)

United States, No. CV-F-97-5044, 2002 WL 32388132, at *3, 2002 U.S. Dist. LEXIS 15872, at *9 (E.D. Cal. June 3, 2002); see United States v. Feldman, 324 F. Supp. 2d 1112, 1116 (C.D. Cal. 2004) ("Debtor examinations are intended to allow the judgment creditor a wide scope of inquiry concerning property and business affairs of the judgment debtor and to leave no stone unturned in the search for assets which might be used to satisfy the judgment.") (citations omitted).

Rule 69 permits the judgment creditor to use any discovery device allowed by the federal rules. Fed. R. Civ. P. 69 advisory committee's note (1970). In applying these rules, district courts have broad discretion to control the timing, sequence, and methods of discovery. Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).

## III. Discussion.

Letcavage asserts that he has "fully complied" with the discovery requests. (Response at 3.) However, he has produced only "eleven account statements from 2020–2021[ ] from one bank," which contain multiple redactions. (Dkt. 250 at 5; Dkt. 250-1 ["Ellenbogen August Decl."] ¶¶ 6–7 & Ex. A.) Further, Letcavage's supplemental discovery responses include multiple objections without clearly indicating whether any responsive information is being withheld on account of those objections. See Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.").

In response to the Requests, Defendants objected on the multiple grounds, including: (1) unduly burdensome, (2) lack of resources to comply, (3) need to confer with counsel, (4) need additional time to comply, (5) overly broad, (6) confidential third-party information, (7) violates the Fourth Amendment, California State Constitution, and Right to Privacy Act of 1978, and (8) lack of confidentiality agreement. (Ellenbogen Decl. Exs. 9–10; Dkt. 249-1 at 9–29.) The Court addresses each objection in turn.

### A. Relevance.

The Court finds that the Requests properly seek to discover assets that might be available to satisfy the judgments and to discover concealed or fraudulently transferred assets. While Defendants did not specifically object on relevancy grounds, at the hearing, Letcavage's counsel indicated that in searching for responsive documents, his *client* determined what information was relevant, and that Mr. Letcavage viewed only recent bank statements as relevant. For purposes of discovery, however, "relevant information" may not be synonymous with a lay person's understanding of the term. The Court expects Letcavage's counsel to actively guide his client's search for responsive

information. Here, records dating back to the alleged beginning of the fraud relevant to tracing the current location of fraudulently obtained funds.

**B. Overly Broad, Unduly Burdensome, and Lack of Time and Resources.**

Defendants vaguely contend that each Request is overly broad and unduly burdensome. They also assert a lack of time and resources. However, "boilerplate objections do *not* suffice and there is no ground upon which to reasonably argue otherwise." Marti v. Baires, No. 08-CV-00653, 2012 WL 2029720, at *5, 2012 U.S. Dist. LEXIS 77962, at *14 (E.D. Cal. June 5, 2012); see Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must either state that inspection … will be permitted as requested or state with *specificity* the grounds for objecting to the request, including the reasons.") (emphasis added); Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981) ("objections should be plain enough and *specific* enough so that the court can understand in what way the [discovery requests] are alleged to be objectionable") (emphasis added). Moreover, Defendants have not met their burden "to demonstrate that production of nonprivileged, responsive documents during this period would be disproportionately burdensome." City of Seattle v. ZyLAB N. Am., LLC, No. C17-0790, 2017 WL 4418636, at *3 (W.D. Wash. Oct. 5, 2017); see N. Am. Co. for Life & Health Ins. v. Philpot, No. 08 CV 270, 2009 WL 10672468, at *4 & n.2 (S.D. Cal. June 1, 2009) (overruling party's discovery objections because it did not quantify its asserted burden to producing the requested information). "It is well-established that the burden is on the objecting party to show grounds for failing to provide the requested discovery." Baykeeper v. Kramer Metals, Inc., No. CV 07-3849 DDP (FMOx), 2009 WL 10671577, at *7, 2009 U.S. Dist. LEXIS 136154, at *16–17 (C.D. Cal. Feb. 27, 2009); see Bible v. Rio Properties, Inc., 246 F.R.D. 614, 618 (C.D. Cal. 2007); Sullivan v. Prudential Ins. Co., 233 F.R.D. 573, 575 (C.D. Cal. 2005). Defendants cannot simply invoke generalized objections without describing, *in specific detail*, how each Request is overly broad and unduly burdensome by submitting affidavits or other evidence describing the nature of the burden. See Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296–97 (E.D. Pa. 1980) (The responding party "must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.").

Here, Defendants have neither explained how each Request is overly broad or unduly burdensome nor provided any evidence describing the nature of the burden. Defendants contend that the scope of the Requests should be "limited to January 1, 2017, to the Present." (E.g., Dkt. 247-12 at 6.) While generally post-judgment discovery is limited to determining the judgment debtor's current assets, here the fraudulent scheme

alleged in the Complaint began in December 2012. (Complaint ¶ 36.) Thus, the Commission is entitled to "determine what Defendants did with the funds they raised and then stole from the investors [along with] what assets they currently have." (Dkt. 250 at 6.) Similarly, Defendants have not provided any support for their contention that they lack the time and resources to confer with counsel and respond timely to the Requests.[5]

For these reasons, Defendants' overly broad, unduly burdensome, and lack of time and resources objections are **OVERRULED**.

**C. Confidential Third-Party Financial Information.**

Defendants vaguely contend that the Requests seek "third party confidential financial information." (Ellenbogen Decl. ¶ 14.) After the Commission sought support for this asserted privilege, Defendants apparently agreed to produce subject to a confidentiality protective order. (Id. ¶¶ 15–16.) The Commission provided Defendants with a sample confidentiality order on March 15, 2021, but Defendants did not respond. (Dkt. 250-1 ["Ellenbogen August Decl."] ¶ 15.) For the "handful" of documents produced by Letcavage, all contain redactions pursuant to an asserted "confidential third-party financial information" privilege. (Id. ¶¶ 6, 7, 10, 15, 16.)

Defendants do not provide—and the Court does not find—any support for their asserted "confidential third-party financial information" privilege under federal discovery rules. Discovery in post-judgment proceedings is not limited to seeking information from the judgment debtor, and the judgment creditor can obtain discovery from both parties and nonparties. VFS Fin., Inc. v. Specialty Fin. Corp., 2013 U.S. Dist. LEXIS 49172, at *11–12, 2013 WL 1413024, at *4 (D. Nev. Apr. 4, 2013). And once judgment has been entered against a defendant, the "desire for confidentiality must necessarily yield to a plaintiff's legitimate need to acquire any and all information reasonably available to locate the defendant's assets." A&F Bahamas, LLC v. World Venture Grp., Inc., No. CV 17-8523 VAP (SS), 2018 WL 5961297, at *8, 2018 U.S. Dist. LEXIS 224399, at *21 (C.D. Cal. Oct. 19, 2018) (citation omitted).

Furthermore, any legitimate confidentiality concerns can be remedied with a protective order. See A&F Bahamas, LLC v. World Venture Grp., Inc., No. CV 17-8523 VAP (SS), 2018 WL 5961297, at *8, 2018 U.S. Dist. LEXIS 224399, at *20 (C.D. Cal. Oct. 19, 2018). At the hearing, the parties agreed to work in good faith to draft a

[5] The Commission previously agreed to a rolling production of responsive information. (Ellenbogen Decl. ¶ 13 & n.7.) While counsel has a "serious medical condition" (Dkt. 249 at 2), at the hearing he did not anticipate any significant delays with responding to the current discovery requests.

stipulated confidentiality protective order. Letcavage's counsel generally agreed that a protective order would satisfy his confidentiality concerns. For these reasons, Defendants' confidential third-party financial information objections are **OVERRULED**.

On September 2, 2021, the Court entered the parties' agreed confidentiality protective order. (Dkt. 255). While Defendants may produce appropriate documents subject to the protective order, they shall produce unredacted versions of the documents previously redacted on the basis of their privacy/confidentiality objections.

### D. Fourth Amendment, California State Constitution, and Right to Privacy Act.

Defendants vaguely object that the Requests "are in violation of the Fourth Amendment of the U.S. Constitution, the California State Constitution, and the Right to Privacy Act of 1978." (E.g., Dkt. 247-12 at 4; Dkt. 247-13 at 4; see Ellenbogen August Decl. ¶ 17.) But Defendants provide no case law or other support for these objections. (See generally Dkt. 249 at 3–4.) Nor does the Court find any legal support for these arguments.

For these reasons, Defendants' Fourth Amendment, California State Constitution, and Right to Privacy Act objections are **OVERRULED**.

### E. Tax Returns.

Defendants contend that their tax returns are "privileged and not subject to production." (Dkt. 249-1 at 15; see Dkt. 247-12 at 3–4.) While California recognizes a qualified tax return privilege, in post-judgment discovery proceedings to enforce the judgment of a federal court, federal common law regarding privileges applies. Internet Direct Response, Inc. v. Buckley, No. SACV09-01335ABCMLGX, 2010 WL 1752181, at *5, 2010 U.S. Dist. LEXIS 50576, at *14 (C.D. Cal. Apr. 29, 2010). Federal common law is especially appropriate where, as here, the underlying case involved only federal questions. See Heathman v. U.S. Dist. Ct. for Cent. Dist. of California, 503 F.2d 1032, 1034 (9th Cir. 1974) ("We hold that the question of the existence and scope of the taxpayer's privilege, if any, to withhold tax return information is to be determined by federal law for the purposes of this federal question case."). The Ninth Circuit has "explicitly rejected a federal privilege for tax returns." In re Com. Money Ctr., No. ADV. 04-90191-H7, 2006 WL 6589751, at *6, 2006 U.S. Bankr. LEXIS 4708, at *18–19 (Bankr. S.D. Cal. June 29, 2006) (citing Heathman); see Young v. United States, 149 F.R.D. 199, 201 (S.D. Cal. 1993) ("Under federal law, tax returns are generally discoverable where necessary in private civil litigation."). "Thus in the post-

judgment contexts, courts have readily required production of tax returns with no showing of compelling need, or with a showing that the judgment debtor has produced only limited documents related to his assets." A&F Bahamas, 2018 WL 5961297, at *8, 2018 U.S. Dist. LEXIS 224399, at *21 (citation omitted) (collecting cases).

The Court finds that Defendants' tax returns are necessary to identify assets that might be available to satisfy the judgments and to discover concealed or fraudulently transferred assets. Any legitimate confidentiality or privacy concerns can be remedied by producing the tax returns subject to the confidentiality protective order. Any objections to producing Defendants' tax returns are **OVERRULED**.

### F. Premier Holding Corp.

The Court deems Premier's failure to oppose Plaintiff's motion to compel as its consent to granting the motion. Local Rule 7-12.

### G. Responsive Information.

At the hearing, Letcavage's counsel indicated that Letcavage has no documents in his possession, custody, or control which are responsive to Requests 7–8 and 10–24. The Court finds this assertion not plausible. For example, Request Nos. 8 seeks documents related to Letcavage's "business affiliation(s) with any entity during the Relevant Period." Given Letcavage's former affiliation with Premier, Letcavage should at least have information related to that affiliation. Similarly, the Court finds it difficult to believe that Letcavage has no documents related to interests in real property held during the relevant period (Request No. 12), no personal property valued at over $5,000 (Request No. 13), no equity stake in any equity (Request No. 14), no transfer of money or property valued at $5,000 or more during the relevant period (Request No. 18), and no cash withdrawals of more than $1,000 during the relevant period (Request No. 20).

Request No. 17 seeks documents sufficient to show the owner of Letcavage's residence and any changes thereto in the last 5 years. Letcavage's assertion that "he does not own his residence and has not owned a residence for the past 5 years" is not responsive. The Commission is entitled to discover who does own Letcavage's residence to ascertain whether asserts have been fraudulently concealed or transferred.

In supplementing his responses, if Letcavage still contends he has no documents in his possession, custody, or control responsive to a Request, he shall execute a due diligence declaration describing where and how he looked for responsive documents and affirming that he either has or will produce all nonprivileged, responsive documents. See

Bryant v. Armstrong, 285 F.R.D. 596, 603 (S.D. Cal. 2012) ("The term 'control' is broadly construed, and it includes documents that the responding party has the legal right to obtain from third parties."); Burnett v. United States, No. EDCV151707CASKKX, 2016 WL 3392263, at *7 (C.D. Cal. June 14, 2016) ("To the extent there is any confusion regarding the meaning of 'currently in Plaintiff's possession, custody, or control,' a document is currently in Plaintiff's control if he has a legal right to obtain it from third parties."). At a minimum, Letcavage shall describe what efforts he took to retrieve responsive information from Premier.

## IV. Order.

### A. Post-Judgment Document Production.

As discussed above, all of Defendants' objections to the Commission's Post-Judgment Document Requests are **OVERRULED**. By no later than **September 24, 2021**, each Defendant shall (1) serve supplemental responses to the Post-Judgment Document Requests, omitting all objections overruled, and truthfully stating that all responsive documents in its possession, custody, or control have been produced,[6] will be produced by **October 15, 2021**, or that none exist;[7] and (2) begin a rolling, unredacted production of all responsive nonprivileged documents to be completed by **October 15, 2021**. If Defendants are withholding or redacting any responsive information based on an applicable attorney-client or work product privilege, they shall promptly produce a privilege log (1) identifying every responsive document withheld or redacted based on privilege, and (2) providing sufficient facts in the log to assess the validity of those privilege claims.

### B. Accounting of Assets.

By no later than **September 24, 2021**, each Defendant shall produce a detailed accounting of their assets that identifies during the period of January 1, 2012, to the present:

(a) the identity of every bank and brokerage account in which Premier or Letcavage had an interest, either directly or indirectly;

[6] Defendants shall identify the Bates numbers of all documents already produced.

[7] As discussed above, Defendants shall execute a due diligence declaration describing where and how they looked for responsive documents.

(b) the transfer out of funds raised by Premier;

(c) the amount of funds paid by Premier, either directly or indirectly, to Letcavage; and

(d) all assets held, directly or indirectly, by (i) Premier and (ii) Letcavage.

**C. Premier Holding Corp.**

While Premier has not yet retained new counsel, it is expected to fully comply with this Order. Plaintiff shall serve a copy of this Order on Scott Dinsmoor, Premier's CEO, and file a proof of service.

Initials of Deputy Clerk JD