```
                    UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
                   SOUTHERN DIVISION - SANTA ANA




SECURITIES AND EXCHANGE      ) CASE NO: 8:18-CV-00813-CJC-KESx
COMMISSION,                  )
                             )                CIVIL
            Plaintiff,       )
                             )        Santa Ana, California
    vs.                      )
                             )        Tuesday, March 1, 2022
PREMIER HOLDING CORPORATION, )
ET AL,                       )        (10:09 a.m. to 10:45 a.m.)
                             )
                Defendants.  )
_____)


                   JUDGMENT DEBTOR EXAMINATION

              BEFORE THE HONORABLE KAREN E. SCOTT,
                 UNITED STATES MAGISTRATE JUDGE




APPEARANCES:              SEE PAGE 2


Court Reporter:           Recorded; CourtSmart


Courtroom Deputy:         Jazmin Dorado


Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

2

<u>APPEARANCES</u>:


For Plaintiff:              BENNETT ELLENBOGEN, ESQ.
                            Securities and Exchange Commission
                            New York Regional Office
                            100 Pearl Street
                            Suite 20-100
                            New York, NY 10004
                            212-336-0062

                            MAUREEN P. KING, ESQ.
                            ALEXANDER M. VASILESCU, ESQ.
                            Securities and Exchange Commission
                            New York Regional Office
                            200 Vesey Street
                            Suite 400
                            New York, NY 10281
                            212-336-0111

3

1                                    INDEX

2    WITNESS EXAMINATION          DIRECT      CROSS      REDIRECT    RECROSS

3    SCOTT DINSMOOR

4      BY MR. ELLENBOGEN          9/16         --          --         --

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1          **Santa Ana, California; Tuesday, March 1, 2002; 10:09 a.m.**

2                          **(Call to Order)**

3          **THE CLERK:**  Please remain seated and come to order.

4    This United States District Court is now in session, the

5    Honorable Karen E. Scott, Magistrate Judge, presiding.

6          Calling Case Number 8:18-CV-813-CJC-KES, *Securities*

7    *and Exchange Commission versus Premier Holding Corporation,*

8    *et al.*

9          Counsel, please go ahead and state your appearances

10   for the record.

11         **MR. ELLENBOGEN:**  Good morning, Your Honor.  It's Ben

12   Ellenbogen for the Securities and Exchange Commission.

13         **THE COURT:**  And I see we have someone else here.

14         **MS. KING:**  Good morning, Your Honor, Maureen P. King

15   for the Securities and Exchange Commission.

16         **THE COURT:**  Can you just introduce yourself at the

17   microphone, please?

18         **MR. DINSMOOR:**  Yes, of course.  My name is Scott

19   Dinsmoor, CEO of Premier Holding Corporation.

20         **THE COURT:**  All right.  Well, good morning --

21         **MR. DINSMOOR:**  Good morning, Judge.

22         **THE COURT:**  -- to both of you.

23         Let me quickly explain the nature of these

24   proceedings and how we're going to go forward today.

25         Mr. Dinsmoor, you're here as a representative of

1   Premier Holding Corporation.  They are a Judgment Debtor and

2   the SEC, as the Judgment Creditor, is entitled to pursue

3   discovery to learn about where Premier Holdings' assets may be,

4   what their financial means may be, what their future income

5   opportunities may be and so forth in order to aid in the

6   collection of the judgment.

7          So the purpose of the examination that Mr. Ellenbogen

8   is going to do is essentially to learn information about any

9   property, assets, business affairs, other financial interests

10  of Premier that could be used to satisfy that judgment.  As

11  such, the scope of the permissible inquiry is very broad.  The

12  permissible inquiry includes anything that could reveal the

13  existence and location of Premier's assets.

14         In a moment, my clerk will administer an oath and

15  you'll be instructed to tell the truth just as if you were

16  testifying in front of a jury.  If you do fail to tell the

17  truth, you could be subject to sanctions including criminal

18  prosecution for perjury.

19         As far as the procedures, oftentimes the parties will

20  bring their own court reporters but they're not required to do

21  that.  What I understand the parties have requested is for us

22  to stay on the record and hear the record as an audio recording

23  system.  The parties will need to speak into microphones in

24  order to make sure that that system picks up clearly what is

25  being said.

 1          My courtroom deputy or another member of my staff

 2   will be here to make sure that she can see on her screen that

 3   the recording equipment is running and hasn't glitched or

 4   stopped for some reason.  And then at the conclusion of the

 5   proceedings, you would need to order a written transcript the

 6   same way you would as if it were a legal argument type of a

 7   hearing that we had here in court.

 8          To the extent that you mark documents as exhibits,

 9   you'll need to describe them well on the record because they

10   won't be in our custody and they won't be attached to the

11   transcript.

12          Do you have any questions about those sort of nuts-

13   and-bolts proceedings?

14          **MR. ELLENBOGEN:**  Your Honor, just one comment.  We

15   are in the process of trying to get a court reporter down here

16   as soon as we can.  If we are lucky and he or she shows up

17   timely, we will -- I've discussed this with your courtroom

18   deputy.  We will stop the court recording and will pick it up

19   with the court reporter if that's okay.

20          **THE COURT:**  That's fine and --

21          **MR. ELLENBOGEN:**  And apologies for the

22   miscommunication that we had at our office.

23          **THE COURT:**  And that's fine.  If it's easier at that

24   point and you want to relocate to one of the conference rooms

25   that's adjacent where people can sit across from each other,

1   then that's fine.  Or you can do it here, however you feel most

2   comfortable.

3            **MR. ELLENBOGEN:**  Okay.

4            **THE COURT:**  The second nuts-and-bolts issue I wanted

5   to bring up was masks.  The court is following the CDC

6   guidelines and at the moment, what I'm told is that since

7   Orange County is in the moderate transmission level, it means

8   that masks are mandatory indoors for people who are not

9   vaccinated but for people who are vaccinated, they are

10  optional.  Clearly, I know people may have health concerns and

11  whatnot and I don't want to inquire into that.

12           So what my policy has been is that if there is a

13  participant who says, I really prefer that we do this with

14  masks, then I'm going to honor that wish and we'll do it that

15  way.  If the participants say, I don't care one way or the

16  other, then it's really up to each individual participant what

17  they do.

18           So let me ask the two of you.  Do you have a

19  preference as to whether everyone who participates have a mask

20  or not?

21           **MR. DINSMOOR:**  I prefer no mask, honestly.

22           **THE COURT:**  Do you -- what do you think,

23  Mr. Ellenbogen?

24           **MR. ELLENBOGEN:**  I am okay with no mask as long as

25  we're socially distanced and the parties who are participating

1    have been vaccinated.

2          **THE COURT:**  Okay.  Hearing that, again, I don't want

3    to ask you about health status but are you willing to honor

4    what he is requesting?  If you weren't vaccinated, for example,

5    would you be willing to wear a mask or does that change

6    anything about how you would proceed today?

7          **MR. DINSMOOR:**  Well, I would wear a mask if that was

8    the case but --

9          **THE COURT:**  Okay.

10         **MR. DINSMOOR:**  -- I just read online that Newsom just

11   took the mask mandates off.  So --

12         **THE COURT:**  Yeah.  Unfortunately, because we're a

13   Federal facility here --

14         **MR. DINSMOOR:**  I understand.  I will abide to any

15   rules you say.

16         **THE COURT:**  Okay.  Like I said, so I've heard

17   Mr. Ellenbogen say that as long as you're socially distanced

18   and he's got a representation that folks who are not masked are

19   vaccinated, then he's okay with that.  And so we'll -- if the

20   court reporter comes, you can set it up in a way where you're

21   socially distanced, then that's fine.

22         All right.  So with those matters taken care of, my

23   courtroom deputy will go ahead and administer the oath.

24         **THE CLERK:**  Mr. Dinsmoor, please raise your right

25   hand.

1          **MR. DINSMOOR:**  Raise the hand?  Yes.

2          **THE CLERK:**  Thank you.

3                  **SCOTT DINSMOOR, WITNESS, SWORN**

4          **THE CLERK:**  Please state your full name for the

5    record.

6          **THE WITNESS:**  Scott Michael Dinsmoor.

7          **THE CLERK:**  Thank you.

8          **THE COURT:**  All right.  So at this point, I'll excuse

9    myself and let you proceed with the examination and if you have

10   any issues, technical or otherwise, you can let Ms. Dorado know

11   and she'll notify me and we'll try and address it.

12       **(Judge Scott exits courtroom)**

13          **MR. ELLENBOGEN:**  Okay.  Thank you, Your Honor.

14                        **DIRECT EXAMINATION**

15   **BY MR. ELLENBOGEN:**

16   Q   Okay.  Mr. Dinsmoor, good morning.  My name is Bennett

17   Ellenbogen and I'm with the Securities and Exchange Commission.

18   And can you please provide me with your address?

19   A   13841 Valencia Avenue -- my personal address?

20   Q   Yes, your personal address.

21   A   Okay, 13841 Tustin East Drive, Tustin, California, Number

22   169.

23   Q   Thank you.  And now you understand that you are here to

24   testify on behalf of Premier Holding Corporation; is that

25   correct?

Dinsmoor - Direct / By Mr. Ellenbogen                    10

1   A    That's correct.  I'm here on my own accord.

2   Q    You are here on your own accord to testify on behalf of --

3   A    I got an email saying I was served but I was not properly

4   served.

5   Q    Mr. Dinsmoor, if you don't mind, let's try not to speak

6   over each other because this is being recorded.  So when I'm

7   speaking, please let me finish what I'm saying and then I will

8   give you the opportunity to speak as well.

9           So, again, you understand -- it's a "Yes" or "No"

10  question -- that you're here to testify on behalf of Premier

11  Holding Corporation?

12  A    Yes, I understand.

13  Q    Okay.  And just to be clear, when I talk about Premier

14  Holding Corporation, I may use the short term of "Premier" as

15  opposed to just the full name.  So when I ask you questions

16  about Premier, you understand that I'm talking about Premier

17  Holding Corporation; is that clear?

18  A    Yes, I do.

19  Q    Okay.  Premier owes the Securities and Exchange Commission

20  almost $10 million pursuant to a judgment against Premier;

21  isn't that correct?

22  A    I'm not aware of that, sir.

23  Q    You are not aware?

24  A    No.

25  Q    You are not aware of the judgment against Premier that was

Dinsmoor - Direct / By Mr. Ellenbogen                    11

1   entered by the Court?

2   A    I did not read that, sir.

3   Q    Okay.

4   A    And I'd just like to say for the record, I would feel more

5   comfortable with legal counsel.

6   Q    Let me ask you a question.  Is -- that's a good point.  Is

7   Premier represented by counsel?

8   A    Right now we are not in good standing.  I have some

9   documents here that I was able to put together.  Obviously, due

10  to COVID --

11  Q    Sir, the question is, is Premier represented by legal

12  counsel today?

13  A    No, that is -- no, we are not.

14  Q    Have you been on notice of this litigation since at least

15  April of 2021 when you sent me an email saying you were looking

16  for counsel, yes or no?

17  A    Yes.

18  Q    Okay.  I'm going to hand to you a document.  For the

19  record, what I've just given to you is a document that's

20  called, "Judgment as to Defendant Premier Holding Corporation."

21  It's been filed with the court as Docket Number 220.  Have you

22  seen this document before?

23  A    If I have, it's been a long time.  I honestly don't

24  remember.  As I'm sure the Court is aware, due to COVID --

25  Q    There's no question pending, Mr. Dinsmoor.

Dinsmoor - Direct / By Mr. Ellenbogen                    12

1   A    No.

2   Q    Mr. Dinsmoor.

3   A    I don't have no recollection.

4   Q    Thank you.  I'm going to hand you another document.  You

5   can set that one aside for right now.  Okay.  What I've just

6   handed to you is a document that if a court reporter comes,

7   we're going to have marked as Exhibit Number 2.  The first

8   document I showed you we're going to have marked as Exhibit

9   Number 1.

10          This -- on the -- it says on the first page, "The

11  United States of America Securities and Exchange Commission

12  Attestation."  And it's attaching a Form 8-K that was received

13  by the Commission on December 17th, 2020 under the name Premier

14  Holding Corporation.  Take a look at Exhibit Number 2 and let

15  me know when you are done.

16  A    I have read it.

17  Q    Have you seen Exhibit Number 2 before?

18  A    No.

19  Q    You're not familiar with Exhibit Number 2?

20  A    No.

21  Q    This discusses the SEC case for which you are appearing

22  here today, for the record, 18-CV-00813.  Are you familiar with

23  this document?  Are you -- I'm sorry.

24  A    No, I'm not.

25  Q    Are you familiar with this litigation?  I apologize.

1  A    Yes.

2  Q    You are familiar with the litigation.  How are you

3  familiar with the litigation?

4  A    I got an email last week saying I was to appear on court

5  today per a serve that I did not receive.  So I came on my own

6  accord.

7  Q    Sorry.  The question is, how are you familiar with the

8  fact that there was a litigation by the Securities and Exchange

9  Commission against Premier Holding, Randall Letcavage and

10 Joseph Greenblatt?

11 A    I just read it.

12 Q    When did you read it?

13 A    Just now.

14 Q    This is the first time you've read about this litigation?

15 A    About this document, yes.

16 Q    That's not my question, Mr. Dinsmoor.  Please listen to

17 the question.  The question is, when did you first become aware

18 that there was a litigation by the Securities and Exchange

19 Commission against Premier Holding?

20 A    That most likely would have been March when you emailed me

21 about a year ago.

22 Q    And did you have any conversations with anybody about that

23 litigation?

24 A    No, I've been working on getting a lawyer.

25 Q    That's not my question, Mr. Dinsmoor.

Dinsmoor - Direct / By Mr. Ellenbogen                    14

1   A    No, I did not.

2   Q    You have not discussed this litigation with anybody at any

3   time?

4   A    With my wife but that's not -- has no reference to this

5   matter.

6   Q    Sir, the question is, have you spoken to about this

7   litigation with anyone?

8   A    No.

9   Q    You said your wife.  Anybody else?

10  A    No.

11  Q    Thank you.  As of today, Premier has paid nothing towards

12  the judgment that it owes in this litigation; is that correct?

13  A    I'm not aware.

14  Q    Did you -- have you taken any steps to make any payments

15  on Premier's judgment -- obligations?

16  A    I have not.

17  Q    As the CEO of the company, what steps have you taken?

18  A    I have taken no -- I have no lawyer representation, sir.

19  I don't have --

20  Q    Sir, the question isn't whether or not you're represented.

21  The question is, have you taken any steps as the CEO of Premier

22  to make any payments on its nearly 10 million-dollar

23  obligation?

24  A    I'm not answering any questions without lawyer

25  representation.

Dinsmoor - Direct / By Mr. Ellenbogen                15

1   Q    Sir, the question is, have you taken any steps to make any

2   payments on behalf of Premier in its -- pursuant to its

3   obligation to -- of nearly $10 million?

4   A    I will state it again, sir.  I need more time to get a

5   lawyer.  I need legal representation.

6   Q    Yes or no?

7   A    I will restate.  I need legal representation.

8   Q    Sir, the judge is sitting back there.  I can get her to

9   come out and the question is simply, "Yes" or "No."  Have you

10  taken any steps to make any payment on the nearly 10 million-

11  dollar obligation that Premier has?

12  A    I would feel more comfortable with lawyer representation.

13  I just need more time to get a lawyer.

14  Q    Mr. Dinsmoor, you'll feel more comfortable to get lawyer

15  representation to do what?

16  A    To discuss any further matter.

17       MR. VASILESCU:  Can you stop for a second, Ben, and

18  have a side break?

19       MR. ELLENBOGEN:  Yeah, why don't we go off the record

20  for one moment?  Thank you.

21       (A recess is taken from 10:26 a.m. to 10:27 a.m.)

22       MR. ELLENBOGEN:  Okay.  Are we back on?

23       THE CLERK:  Okay, you're back on.

24       MR. ELLENBOGEN:  Okay, thank you.

25  //

1              **DIRECT EXAMINATION (CONTINUED)**

2    **BY MR. ELLENBOGEN:**

3    Q    Mr. Dinsmoor, I just want to get some clarity on your

4    answer about your need to retain counsel.  Are you saying that

5    you need to retain counsel to answer questions at this hearing

6    or that you need to retain counsel to give you some sort of

7    advice about making payments on Premier's obligation?

8    A    This hearing.

9    Q    So is it your intention not to answer questions without

10   counsel today?

11   A    Yes.

12   Q    Okay.  Then I'm going to request that we have the

13   Magistrate come back out here so we can discuss this issue with

14   the Magistrate.

15           **MR. ELLENBOGEN:**  And if we need to go off the record,

16   we can do that, too.

17           **THE CLERK:**  Okay.  We'll go ahead and go off the

18   record.  This is the courtroom clerk and I'll let the judge

19   know that the parties are requesting assistance.

20           **MR. ELLENBOGEN:**  Thank you.

21       **(A recess is taken from 10:28 a.m. to 10:30 a.m.)**

22           **THE CLERK:**  Okay.  We are back on the record on Case

23   Number 8:18-CV-813, *SEC versus Premier Holding Corporation,*

24   *et al.*, Magistrate Judge Karen E. Scott presiding.

25           **THE COURT:**  My courtroom deputy advised me that there

1  was a question about whether or not Mr. Dinsmoor could or

2  should retain an attorney.  I can tell you, sir, that you do

3  have a right to be represented by counsel although not at

4  government expense.  What is your proposal for what you would

5  like to do?

6          **MR. DINSMOOR:**  If I may, Judge Scott -- do you mind

7  if I stand?

8          **THE COURT:**  Go right ahead.

9          **MR. DINSMOOR:**  I am more comfortable.  I (indisc.) my

10  back.  So thank you.

11          So it was due to us being in bad standing for so

12  long, right.  I was not able to obtain a lawyer but I did put

13  together some documentation that I was able to find, right.  I

14  know you guys were requesting documentation.  I was able to

15  find some of that.

16          With COVID and everything being shut down, I got an

17  email last week saying I had been served.  I never got personal

18  paper in my hand.  I don't go to the office because of COVID.

19  I'm very super scared of COVID, being around people.  So I'd

20  really prefer some more time so I can acquire legal counsel,

21  Judge.

22          **THE COURT:**  Well, you go ahead.  I mean, usually if

23  folks were going to retain counsel, we usually have a date

24  certain.  We don't usually just have an indefinite extension.

25          **MR. DINSMOOR:**  No, of course.

18

1          **THE COURT:** Right.  Okay.

2          Mr. Ellenbogen?

3          **MR. ELLENBOGEN:** Just a couple things.  First, just

4    by way of background, Mr. Dinsmoor is refusing to answer

5    questions because he doesn't have counsel.

6          Second, Mr. Dinsmoor has been on notice that he --

7    that there's a litigation and that Premier needs to retain

8    counsel and is -- since April of 2021 and there's been no steps

9    taken.  As you know, he has -- he -- Premier -- excuse me --

10   hasn't participated in the litigation whatsoever.

11         And Mr. Dinsmoor was served by a court reporter with

12   the papers ordering him to appear with or without counsel to

13   provide testimony today.

14         **THE COURT:** Well --

15         **MR. DINSMOOR:** I was never served in my hand.

16         **THE COURT:** -- at this point, he's appeared.  So you

17   have --

18         **MR. DINSMOOR:** Of my own free will.

19         **THE COURT:** Right.  So you have notice of what's

20   going on here and we can take it from there.  In terms of

21   trying to reschedule something, again, the Court would be

22   willing to move this, say, like a week in order to get you to

23   retain counsel but the Court is sensitive to the fact that

24   Premier has been involved in this litigation for a long time

25   and has known that it doesn't have counsel appearing for it

19

1    although it did have counsel appearing for it in the appeal.

2              And so it seems that there should be some opportunity

3    out there for someone to come in and represent Premier or if

4    you're concerned about somebody representing you personally,

5    that would be a different concern.

6              But the Court is not going to authorize a lengthy

7    extension given the delays that have already happened here and,

8    again, the practicalities that make it seem that counsel could

9    be retained in a short period of time here.

10             Is there some other date in the short term of March,

11   say, next week or the week of the 14th when you would be

12   available to come back to court to continue this process?

13             **MR. DINSMOOR:**  Well, if I may, Judge.  Yeah, see,

14   we've been in bad standing for so long obviously with Premier

15   Holding Corporation.  I was able to put together all the papers

16   I could due to COVID and everything being shut down, which why

17   didn't I get this service at my office because COVID.  And I

18   never had papers gave into my hand.  I was not home.  So I got

19   an email.  So I came down on my own free accord.

20             And I just need time to get legal representation so I

21   can get everything put together and I'd prefer to be

22   represented by legal counsel.

23             **THE COURT:**  Uh-huh.

24             **MR. DINSMOOR:**  That's my God-given right.  I would

25   like that but I need probably more than two weeks.  I need a

1   good -- give me a month or two to be able to have them review

2   everything, put it together.  I want to discuss the case, have

3   them go through everything I have not seen and so that way I

4   can see what I have not seen because I've been in lockdown

5   basically the past year and a half, two years.  So that's the

6   fact of the truth.  That's the truth of the matter.

7           THE COURT:  Yeah --

8           MR. ELLENBOGEN:  Respectfully, Your Honor, he --

9   Mr. Dinsmoor told me in April of 2021 that he was in the

10  process of retaining counsel and simply hasn't done it.

11  Another practicality is I flew in from New York.  It's a --

12  it's not the easiest to get here and I greatly prefer to be

13  face to face with Mr. Dinsmoor for this hearing.

14          MR. DINSMOOR:  Well, Judge, if I may.  Since we have

15  been in bad standing for so long, there is no capital.  I'm

16  doing all I can to get legal representation.  That's -- the

17  fact of the matter is there's no money.

18          THE COURT:  Well, I guess what I want to avoid is

19  saying, okay, we'll delay this and make Mr. Ellenbogen fly out

20  and fly back again and for -- then for you to come back and

21  say, no, I wasn't able to retain counsel because we didn't have

22  any money.  So if you're telling me now that there's no money

23  to retain counsel, what is the plan for --

24          MR. DINSMOOR:  I'm speaking of when I got that email

25  back and forth with --

1          **THE COURT:**  Back in April of 2021?

2          **MR. DINSMOOR:**  Yes.  We were in bad standing but I

3  did get some documentation put together.  We are in good

4  standing now.  So things have changed on that end at least.  We

5  are in good standing, I believe.  So I have some -- I have a

6  file here I'm willing to give over which I was ordered to do,

7  on my own accord.  Like I said, I did show up on my own accord

8  but I would prefer to be represented by legal counsel.  That's

9  my God-given right.

10          **MR. ELLENBOGEN:**  Your Honor, there's --

11          **THE COURT:**  And we'll give you an opportunity to do

12  that but we're not going to give you two months.  I don't think

13  that it's important for -- and this attorney's role would be to

14  represent you in a Judgement Debtor Exam and so in order to do

15  that, there is not a lot of back work that the attorney would

16  need to do with respect to the rest of the case because, again,

17  this proceeding is not about the merits of the case.  It's

18  about the location and nature of Premier's assets to satisfy

19  the judgment.

20          So, again, the Court is willing to pick a date on the

21  week of March 7th or the week of March 14th but that's about as

22  far as the Court is going to go and the Court thinks it is,

23  given the history of this case, eminently reasonable that

24  Premier should be able to retain an attorney within that time

25  period.

1          **MR. ELLENBOGEN:**  Just a couple points I'd just like

2    to raise.  There's no indication that Premier's standing has

3    changed between a week ago, a month ago, a year ago and today

4    and they're not in good standing.  They haven't filed any of

5    the filings that they're obligated to file, 10-Ks, 10-Qs to put

6    them up to date.  It's been years.  So we have no indication of

7    their financial information.

8          And as you correctly point out, the questions that

9    we're asking are going to relate to the relevant time period of

10   2012 to the present.  So what Mr. Dinsmoor knows or doesn't

11   know, a lot of it will predate his employment.  And he's had

12   ample, ample, ample opportunity to retain a counsel to give him

13   any kind of advice that he needs.

14         **THE COURT:**  No, I understand the frustration on the

15   part of the SEC but at the same time, I do want to honor a

16   request to be represented by counsel.

17         Go ahead, Mr. Dinsmoor.

18         **MR. DINSMOOR:**  And, Judge, if I may.  I'm sorry.

19   With everything going on with my wife's cancer and whatnot,

20   she's super scared of COVID.  So I've been on lockdown.  This

21   COVID has really put me back far.  I know it's no excuse for

22   COVID but that's the honest truth and I just -- like I said, if

23   you could grant me some more time, I'd really appreciate that.

24         **THE COURT:**  Well, as I -- I brought my calendar out

25   there.  The Court would have free time on Monday, March 14th.

23

1    Would you be able to do that, Mr. Ellenbogen?

2            MR. ELLENBOGEN:  I may do it telephonically.  We'll

3    see what the office says about that.

4            THE COURT:  Okay.  And are you free on Monday, March

5    14th, Mr. Dinsmoor?

6            MR. DINSMOOR:  I can make myself free.

7            THE COURT:  Okay.  Well, then what the Court is

8    willing to do is to suspend these proceedings and continue them

9    until March 14th --

10           MR. ELLENBOGEN:  Can I have a suggestion?

11           THE COURT:  Go ahead.

12           MR. ELLENBOGEN:  Can I -- since I'm here in person

13   and Mr. Dinsmoor is here, can I proceed with this examination

14   and get some of the general background information on

15   Mr. Dinsmoor so we don't run into issues just so my -- just his

16   general background information?  Or should -- would you prefer

17   that we wait until he's represented?

18           THE COURT:  I think we should wait until he's

19   represented but what you can do is he's indicated that he has a

20   number of documents that he's going to hand over to you.

21           MR. ELLENBOGEN:  Yes.

22           MR. DINSMOOR:  I have one file.

23           THE COURT:  Okay.

24           MR. ELLENBOGEN:  That was my next --

25           THE COURT:  So you can certainly take possession of

24

1    that and have a discussion about whether you need to copy it or

2    if these are copies you can keep or what the status is.

3            **MR. ELLENBOGEN:**  Yes.

4            **THE COURT:**  And you'll have a chance to review that

5    before the 14th.

6            **MR. ELLENBOGEN:**  I just have one last point I'd like

7    to raise.  Your prior order -- this Court's prior order said

8    that Premier has to show up with or without counsel for the

9    examination today.  So I would just like to make it clear that

10   if Mr. Dinsmoor again either doesn't show up for the next

11   scheduled hearing or shows up without counsel and doesn't want

12   to testify that there is some repercussion that's clear in the

13   Court order about what the Court plans to do with that.

14           **THE COURT:**  What I would like, Mr. Dinsmoor, is that

15   on either the Thursday or Friday before the 14th -- so March

16   10th or 11th, if you can exchange emails with Mr. Ellenbogen --

17   I know you've got each other's email address -- and just

18   confirm that counsel is on board and will be here.

19           **MR. ELLENBOGEN:**  Can we have a date certain for that?

20           **THE COURT:**  Why don't we do that by the close of

21   business on March 10th?

22           **MR. ELLENBOGEN:**  Thank you.

23           **THE COURT:**  And if there is some problem with

24   counsel, it is going to be the Court's expectation that you

25   come in any event on the 14th because, again, there has been a

1    lot of opportunity here and notice that there was going to be a

2    need for Premier to obtain counsel and there are lots of

3    attorneys in the Orange County community here who would be

4    willing and able to take the case and assist you.  And so it's

5    just a matter of finding one and two weeks should be an ample

6    period of time in which to do that.

7            **MR. DINSMOOR:**  Right.  And, Judge, if I may

8    reiterate.  I only came because I saw the email.  I did not get

9    properly served.  So I did not have that.  So I got an email.

10   I came here based off an email I got last week.

11           **THE COURT:**  And who was the email from?  Okay.

12           **MR. ELLENBOGEN:**  He was -- just for a background of

13   service, we hired a court -- a process server who identified

14   Mr. Dinsmoor's address that he confirmed on the record today --

15   went to his house and a woman who identified as his wife said,

16   yes, this is Mr. Dinsmoor's house and I will accept service for

17   him and he's usually home at night.  They came -- so she

18   accepted service.

19           The court reporter -- the process server came back

20   within the next couple of days in the evening time and a male

21   voice threatened the process server when the process server

22   identified themselves.  And he said -- the male voice said he

23   refused to accept service.

24           So in addition to those two attempts, service was

25   performed in person on the registered agent and I emailed the

1   documents, the documents being the Court order -- the prior

2   Court order relating to discovery and the document request that

3   was sent to Premier's counsel several years ago.  So it was

4   confirmed that he -- that Mr. Dinsmoor would have notice of

5   today's hearing and obviously he did have it.

6           **THE COURT:**  Well, I understand --

7           **MR. DINSMOOR:**  Judge, if I may, Judge, really quick.

8           **THE COURT:**  -- I understand there's a factual dispute

9   about what happened there but I think what's important is just

10  going forward that --

11          **MR. DINSMOOR:**  Sure.  Well, if I may, can I clear

12  that record, please?  First and foremost, my wife does not know

13  anything about legal things whatsoever.  And second and

14  foremost, I was -- that night of -- we're speaking was

15  Valentine's Day.  My wife's uncle was there at the house.  I

16  was in the master bedroom.  So I was not even near there in

17  that room.

18          **THE COURT:**  Okay.  Well, in any event --

19          **MR. DINSMOOR:**  So any male voice speaking was my --

20  her uncle and I was upset it was Valentine's Day.  So, I mean,

21  come on.

22          **THE COURT:**  In any event, you're here now and so

23  you're able to hear the Court directing that you return on the

24  14th.  And so you're not going to get served with some

25  additional notice of that date.  This is the notice that that

1    date is a required date for Premier to have a corporate

2    representative here for the Judgment Debtor Exam.

3            And we'll enter minutes on the record that reflect

4    that we had this hearing, that it was stopped in response to

5    Premier's request to retain counsel and we'll reflect that

6    there's supposed to be an email exchange by the close of

7    business on March 10th.

8            **MR. DINSMOOR:**  Yeah, March 10th.  I have it written

9    down.

10           **THE COURT:**  Okay.  Then if you want to, you can look

11   on the Pacer where all the courts' records are posted.  It's

12   all public record.  But there will be minutes that reflect that

13   so that there's no confusion.

14           **MR. ELLENBOGEN:**  Will there also be a Court order or

15   just the minutes?

16           **THE COURT:**  Well, the minutes will be in the form of

17   a Court order.  They will say that it was ordered that the

18   Judgment Debtor Exam be suspended but continued on the 14th.

19           **MR. ELLENBOGEN:**  Thank you.

20           **THE COURT:**  All right.  And with that, any other

21   details that the Court can clear up?

22           **MR. ELLENBOGEN:**  No, thank you, Your Honor.  We --

23   previously in our last hearing, you had -- Your Honor had

24   suggested that we file a finding of fact relating -- since I'm

25   here, I thought I would talk about it -- relating to Premier.

1    Okay.

2            THE COURT:  And that's -- I have -- I do have that.

3    I am aware of that.

4            MR. ELLENBOGEN:  Okay.

5            THE COURT:  And we have, unfortunately, been a little

6    under water in chambers but I know that we're in the course of

7    reviewing that.  I think we need to change a few things and I

8    saw that the appeal was resolved in the interim.

9            MR. ELLENBOGEN:  That's -- and that's the point I was

10   raising.  Yes.

11           THE COURT:  And there was some -- we were going to

12   break out some facts that had to do with Mr. Letcavage versus

13   Premier and so forth but that is something that we are still

14   aware of and working on.

15           MR. ELLENBOGEN:  Okay.  Thank you very much, Your

16   Honor.

17           MR. DINSMOOR:  Thank you, Judge.

18           THE COURT:  Thank you.

19           THE CLERK:  Your Honor, just to be clear, is that

20   10:00 a.m. on March 14th?

21           THE COURT:  Yes.  Let's do it at 10:00 a.m.

22           THE CLERK:  And here in Courtroom 60, correct?

23           THE COURT:  Yes.  Okay.  All right.

24           MR. ELLENBOGEN:  Thank you, Your Honor.

25           THE CLERK:  Court is now adjourned.

(Proceeding adjourned at 10:45 a.m.)


CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.



_____                    March 19, 2022
           Signed                                        Dated



                    TONI HUDSON, TRANSCRIBER