**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

**HONORABLE CORMAC J. CARNEY, U.S. DISTRICT JUDGE**

```
SECURITIES AND EXCHANGE        )
COMMISSION,                    )
                               )   Certified Transcript
            Plaintiff,         )
                               )   Case No.
     vs.                       )   8:18-cv-00813-CJC-KES
                               )
PREMIER HOLDING CORPORATION,   )
et al.,                        )
                               )
            Defendants.        )
                               )
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS
STATUS CONFERENCE
THURSDAY, NOVEMBER 10, 2022
10:03 A.M.
SANTA ANA, CALIFORNIA

**DEBBIE HINO-SPAAN, CSR 7953, CRR**
FEDERAL OFFICIAL COURT REPORTER
411 WEST 4TH STREET, ROOM 1-053
SANTA ANA, CA 92701
dhinospaan@yahoo.com

```
 1                    APPEARANCES OF COUNSEL:

 2


 3   FOR PLAINTIFF:

 4           SECURITIES AND EXCHANGE COMMISSION
             BY:  BENNETT ELLENBOGEN, ESQ.
 5           100 Pearl Street
             Suite 20-100
 6           New York, New York 10004-2616
             212-336-0062
 7           ellenbogen@sec.gov

 8   FOR DEFENDANT RANDALL LETCAVAGE:

 9           PHILLIP G. TRAD LAW OFFICES
             BY:  PHILLIP G. TRAD, ESQ.
10           PO Box 19093
             Irvine, California 92693-9093
11           714-990-3541
             ptrad@roadrunner.com
12
     ALSO PRESENT:
13
             Randall Letcavage
14           Scott Dinsmoor

15

16

17

18

19

20

21

22

23

24

25
```

|   |   |
|---|---|
| 1 | **SANTA ANA, CALIFORNIA; THURSDAY, NOVEMBER 10, 2022** |
| 2 | **10:03 A.M.** |
| 3 | - - - |
| 4 | THE COURTROOM DEPUTY: Calling Item Number 2, |
| 10:03AM 5 | SACV 18-00813, Securities and Exchange Commission versus |
| 6 | Premier Holding Corporation, et al. |
| 7 | Counsel, please state your appearances. |
| 8 | MR. ELLENBOGEN: Good morning, Your Honor. Ben |
| 9 | Ellenbogen for the Securities and Exchange Commission. |
| 10:04AM 10 | THE COURT: Hello, Mr. Ellenbogen. |
| 11 | MR. ELLENBOGEN: Hello. |
| 12 | MR. TRAD: Good morning, Your Honor. Phillip Trad |
| 13 | on behalf of defendant Mr. Letcavage. And I should advise the |
| 14 | Court that Mr. Letcavage is on his way. He had a major |
| 10:04AM 15 | mechanical breakdown. He had to switch cars, but he will be |
| 16 | here shortly. |
| 17 | THE COURT: Okay. Very well. What I wanted to do |
| 18 | is talk to you about the evidentiary hearing on whether one or |
| 19 | more of the defendants should be held in civil contempt. |
| 10:04AM 20 | Mr. Ellenbogen, tell me a little bit about what you |
| 21 | envision the hearing being like: How long? How many |
| 22 | witnesses? When will you be ready to go? |
| 23 | MR. ELLENBOGEN: Thank you, Your Honor. Do you |
| 24 | mind -- sitting is okay? |
| 10:04AM 25 | THE COURT: That would be fine for this purpose. |

**UNITED STATES DISTRICT COURT**

1                MR. ELLENBOGEN:  Let me note for the record, also,
2   that Premier's CEO, Scott Dinsmoor, is in the courtroom as
3   well, unrepresented.
4                THE COURT:  Hello.
10:05AM  5                And since the company is a defendant, they have to
6   have counsel.
7                And is there no counsel present to represent the
8   company?
9                MR. DINSMOOR:  I have no counsel.
10:05AM 10                THE COURT:  All right.  Given that fact, I don't
11  think it would be appropriate, sir, for me to have you sit at
12  the table because you're not able to represent the corporation
13  since you're not a lawyer.  Only a lawyer can represent the
14  corporation.  All right.
10:05AM 15                MR. ELLENBOGEN:  Thank you, Your Honor.
16                We would envision probably a very simple hearing
17  with just a few witnesses.  The witnesses that I envision and
18  the SEC would envision that would appear would be Mr. Letcavage
19  on behalf of himself and on behalf of Premier Holding, as he
10:06AM 20  was the CEO during the totality of the relevant period of 2012
21  through the time we brought the litigation.
22                I think it would also be very helpful for
23  Mr. Dinsmoor to appear as the representative and only
24  representative, as far as I know, of Premier and its current
10:06AM 25  status.  And Mr. Dinsmoor would be able to explain

1 inconsistencies potentially in his testimony and information
2 that has come to light subsequent to the Order to Show Cause.
3     For example, we have learned what appears to be that
4 Mr. Dinsmoor sent fundraising emails before he was -- he
10:06AM 5 testified that he was involved with Premier.  So we want to get
6 a little background on that.  And that he had a consulting
7 agreement with one of the companies that Mr. Letcavage was
8 affiliated with but did not disclose he was affiliated with,
9 yet he has no -- Mr. Dinsmoor has no business background, no
10:07AM 10 formal training, and it's a science company.  So there's a lot
11 to explain.
12     And, of course, Mr. Letcavage can explain the
13 history of Premier Holding and the assets of what happened to
14 the assets, what was raised and what happened, both for Premier
10:07AM 15 and for himself because he has utterly failed to do so during
16 the litigation, and now in the post-discovery litigation as
17 summarized by Magistrate Judge Scott in her order.
18     And I think we have one other witness that might be
19 able to help us out, and that is the secretary throughout much
10:07AM 20 of the relevant time period at Premier.  Her name is Megan
21 Bradshaw.  And she has been the secretary and the bookkeeper,
22 as far as we understand it, for Premier and for a number of
23 Mr. Letcavage's other companies, which we have reason to
24 believe monies were transferred to and from, and that she
10:08AM 25 handled that.

1    Just a couple of pieces of background that might
2    clarify a few of the issues.  We learned during the
3    post-litigation discovery of at least 13 companies, which
4    Mr. Letcavage appears to have been affiliated with, which he
10:08AM 5   did not disclose, and over 40 bank accounts, which he appears
6    to be affiliated with at some time during the relevant period,
7    which he did not disclose, provided that information to
8    Mr. Letcavage through his counsel and -- for explanation.
9            And we haven't gotten any additional documents that
10:08AM 10   would clarify what's happening, whether these -- they admitted
11   some of these accounts and some of these companies he was
12   affiliated with.  But we were provided with no business
13   records, no account statements, no information that would help
14   us learn what happened to the assets and where they may be.  So
10:09AM 15   I think we need to have Mr. Letcavage testify as to those areas
16   as well.
17           THE COURT:  Now, I was, obviously, going to ask
18   Mr. Trad what he envisions and the witnesses that he does -- I
19   gather from the papers that the defense is "As far as the
10:09AM 20   money, we don't have money.  With respect to the discovery
21   order, we're doing the best we can."  I'm just trying to
22   simplify it.
23           Do you anticipate having witnesses to impeach
24   whatever these witnesses will say by the defense?
10:09AM 25           MR. ELLENBOGEN:  I have Mr. Letcavage's documents

```
 1  and emails from Mr. Trad to impeach.  Mr. Letcavage, through
 2  his counsel, has informed us that he does have money.  He has
 3  some money to pay us somewhere between 400,000 and $800,000,
 4  which he hasn't paid.  I've asked why; it hasn't been answered.
 5            With regard to they're trying to cooperate, I don't
 6  know who else to ask.  I mean, we can put on an SEC examiner
 7  perhaps to authenticate the work that we've done, public record
 8  searches, et cetera, to indicate that there are documents that
 9  exist that indicate that Mr. Letcavage has some affiliation
10  with other companies.  So maybe that's another witness that we
11  could add as well.
12            THE COURT:  Well, I guess -- and maybe I should hear
13  from Mr. Trad first -- what I'm trying to do is I'm viewing
14  this as a bench trial.  It's an evidentiary hearing.  And so
15  what I need you both to do is disclose the witnesses to each
16  other, talk about the documents that are going to be
17  introduced, because I don't want to be fumbling over documents
18  at the hearing.  I want to use the time appropriately.
19            So I'm trying to get a sense of are we ready to go
20  and have this evidentiary hearing next Friday, yes or no?  And
21  we'll go until we're done.
22            MR. ELLENBOGEN:  I'm sorry, Your Honor.
23            THE COURT:  That's why I'm asking you these
24  questions.  I'm not making any decision on whether he's in
25  compliance or not.  I'm just -- I get it.  I sense the defense
```

1 is "We are in compliance to the best we can." I don't know
2 whether that's true or not. They're going to be given an
3 opportunity to do that. I just need to know the logistics of
4 this proceeding.
5      MR. ELLENBOGEN: I understand. Thank you,
6 Your Honor.
7      I think that there may be one step we can take
8 before that. And, again, you know, some admissions that the --
9 the counts that we have found, the businesses we have found,
10 admissions that he was affiliated with them and these are his
11 accounts, that will make that step a lot easier.
12      With regard to a hearing next Friday, it's a little
13 bit problematic because I'm coming from New York and I'd have
14 to go back and forth. I might need a little bit more time,
15 just practically speaking. A couple of weeks is all I need.
16 But I don't know what other steps we would need to take to be
17 prepared other than conversations with counsel to narrow the
18 scope of what additional materials we could -- we will need to
19 authenticate outside of what Mr. Letcavage authenticates for
20 us.
21      THE COURT: Okay. Mr. Trad, give me your sense of
22 what you envision in this evidentiary hearing.
23      MR. TRAD: I actually agree with counsel's
24 assessment. I don't think it's an overly complicated hearing.
25 It's going to be relatively straightforward other than the

|  |  |  |
|---|---|---|
|  | 1 | witnesses he has potentially suggested.  We may need a |
|  | 2 | representative of the SEC since, obviously, Mr. Ellenbogen |
|  | 3 | couldn't testify -- to testify as to what their efforts were. |
|  | 4 | But my primary concern is that -- and I responded to |
| 10:13AM | 5 | this in recent correspondence -- unfortunately, Mr. Ellenbogen |
|  | 6 | and I have been changing documents within the last few days. |
|  | 7 | We didn't have the luxury of a lot of time.  But there's a |
|  | 8 | reference to these 13 corporations.  We've already provided |
|  | 9 | corporate records and stock certificates of over 20 |
| 10:13AM | 10 | corporations that Mr. Letcavage hasn't been provided. |
|  | 11 | So we haven't had a chance to review all these other |
|  | 12 | companies that are -- there's no information, just a list of |
|  | 13 | names.  And, more importantly, he makes reference to 43 bank |
|  | 14 | accounts.  We have no information on those accounts except |
| 10:13AM | 15 | those that we can identify, which we've responded to.  And we, |
|  | 16 | obviously, would have to have the ability to research and |
|  | 17 | prepare for the fact that they're going to put evidence on 43 |
|  | 18 | accounts.  We believe most of those are years old, closed, or |
|  | 19 | whatever. |
| 10:13AM | 20 | But until I can get actual records from the |
|  | 21 | Commission so that we can do appropriate and reasonable |
|  | 22 | inquiries so we know what the heck we're talking about, I don't |
|  | 23 | know how we get a reasonable opportunity to do that in less |
|  | 24 | than a month.  And I don't want to run into Christmas holidays, |
| 10:14AM | 25 | but I have no choice. |

1  And the Court has its court calendar it has to deal
2  with. But we have to be able to get the evidence. And
3  Mr. Ellenbogen and I have been trying to cooperate on
4  exchanging the documents or information. And so if we can get
5  that information, the sooner, the better, then we can make
6  inquiry. And we might be able to resolve some of this even
7  before any factual hearing date that the Court may set.
8  So that would be my position. If they're going to
9  send out a request for admissions, I don't know what they are
10 until I see them, as far as any post-judgment.
11 THE COURT: Right.
12 MR. TRAD: But I would indicate that we have filed
13 an amended financial disclosure with the SEC, and Mr. Letcavage
14 is prepared to testify to that. And, hopefully, we can
15 continue a possible resolution in this matter.
16 The practical side of it is no matter which way you
17 go, Mr. Letcavage does not have $10 million in ground numbers
18 to satisfy this judgment. But there are informative things
19 that would work that would help get both sides at least some
20 benefit to this resolution. So that's our position.
21 THE COURT: I appreciate it, what you're saying.
22 Let me give you some comfort. There's going to be
23 due process, but this case is really -- has been there for a
24 while, and I need to resolve it. And I take the orders that
25 were issued by me and the judgment issued by me very seriously.

|  |  |
|---|---|
| 1 | And I need to get to the bottom of this sooner rather than |
| 2 | later.  But I don't want this to be a circus.  I want this to |
| 3 | be handled like it was a trial. |
| 4 | So that means there needs to be meeting and |
| 10:16AM 5 | conferring and disclosing the witnesses, disclosing the |
| 6 | exhibits, and teeing the issues up for the evidentiary hearing |
| 7 | so it can be meaningful.  Because if not, we're going to be |
| 8 | stopping and starting for weeks.  And I just can't -- I don't |
| 9 | have that time and it's not going to be appropriate. |
| 10:16AM 10 | So this is a request on my part is how do I get you |
| 11 | guys to give each other what you need to be prepared to have |
| 12 | this hearing? |
| 13 | MR. TRAD:  Might I suggest, Your Honor, that give |
| 14 | Mr. Ellenbogen and I at least a short window, couple of weeks |
| 10:16AM 15 | to get that somewhat procedurally worked out and maybe a status |
| 16 | conference call with the Court once we know where we're at so |
| 17 | the Court could better evaluate when it would like to schedule |
| 18 | and the time it might be involved so we're not wasting time and |
| 19 | wasting burdening the Court? |
| 10:16AM 20 | THE COURT:  I am open to that as long as it's not |
| 21 | too long.  Again, I want to move with diligence.  I don't want |
| 22 | to rush it.  I don't want to, in any way, deny anybody due |
| 23 | process.  But I've got to move this because the disputes that |
| 24 | you've had, from where I'm sitting, they've been outstanding |
| 10:17AM 25 | for too long.  I don't understand why there hasn't been a |

1  resolution or an evidentiary hearing before now.

2  MR. ELLENBOGEN: Your Honor, can I add my two cents?

3  THE COURT: Sure.

4  MR. ELLENBOGEN: I appreciate what you're saying.
5  The one -- it's almost a catch-22. But as Mr. Trad is
6  explaining, he is making the SEC -- his client is making the
7  SEC find all of the information to provide him about what his
8  clients -- where he had accounts, where he had assets, where --
9  what company he's affiliated with. He's not providing it to
10 us. The burden has somehow shifted to us to find out the
11 information. And it's a little tricky because, you know --

12 THE COURT: The burden's not on you. The burden on
13 you is to say, "Here are the orders, and they haven't been
14 complied with."

15 And it's up to the defense to say, "We can't comply"
16 or "We have complied." I don't want to dance around it.

17 You know, my choice is, "Okay, we'll be here next
18 week. Call your first witness."

19 MR. ELLENBOGEN: No, Your Honor.

20 THE COURT: I don't think that --

21 **(Mr. Letcavage entered the courtroom.)**

22 THE COURT: This must be Mr. Letcavage.

23 Come forward, sir.

24 How are we going to move forward? Are we going to
25 start the hearing next Friday? Or are you going to try to get

1  together and at least coordinate the witnesses, the exhibits,
2  see if you can resolve the issues or what?
3           MR. ELLENBOGEN:  Thank you.  I understand,
4  Your Honor.  And, again, I agree with you, that there have been
5  numerous orders to Mr. Letcavage to produce documents, to
6  produce money.  There have been numerous correspondence from us
7  saying "You failed," and numerous motions saying "for
8  contempt."
9           So we're at a place where we are -- we don't know
10 what's left to do.  We're happy to begin a hearing as soon as
11 practical from my end, which would be a couple of weeks.
12          I'm also open to Mr. Trad's suggestion that we get
13 together and try to narrow the scope and come to an agreement,
14 at least, about what issues remain in dispute, and we can then
15 have a -- maybe a more focused hearing.  I'm open to either.
16          But I think the SEC, other than the practical issue
17 of flying back and forth and getting materials ready as quickly
18 as Friday, we would be ready to go.  So I would say maybe a
19 couple of weeks for that or a little bit longer if Mr. Trad --
20 as Mr. Trad has requested is fine with us as well.
21          THE COURT:  Okay.  Here's what I'd like to do.
22 Mr. Trad, I'll give you an opportunity if you object to it.
23          You're here today.  Use this time, especially since
24 you came all the way out from New York.  Start talking now.
25 We'll have a telephonic conference next Friday at 9:00 a.m. to

1 discuss the evidentiary hearing. My hope is that we could
2 start that evidentiary hearing November 28th. And if you can't
3 start it then, please be prepared to tell me why you can't.
4     MR. ELLENBOGEN: Yes.
5     MR. TRAD: Your Honor, I pose no objection to that.
6 We actually have intended to meet at the conclusion of today
7 because we have some supplemental discovery things that we're
8 coordinating. This hearing sort of fell in the middle of one
9 of them. And I think that would give us ample opportunity.
10     I think we can deal with most of the issues. But as
11 the SEC has stated, we found 43 bank accounts that may -- until
12 we have the accounts, until we have the information, I can't
13 prepare for that. But maybe we should be able to accomplish
14 that --
15     THE COURT: Hopefully you will.
16     MR. TRAD: -- this week and get that ironed out so
17 that we're ready to go. Otherwise, I wouldn't have a potential
18 objection to November 28. I think we should have enough time
19 in that period to get all of this ready.
20     THE COURT: Good. So we'll hopefully finalize,
21 then, the parameters of the evidentiary hearing on November 18.
22 We can do that telephonically. But let's tentatively plan for
23 the evidentiary hearing November 28.
24     And so you're not shocked, what I would
25 anticipate -- in anticipation of the evidentiary hearing on the

```
 1   28th, I would appreciate a very short opening brief from each
 2   side so I kind of know what -- the issues that you're going to
 3   be focusing on.  And you can start thinking about those issues.
 4              MR. TRAD:  Very well, Your Honor.
 5              THE COURT:  And then we'd have the evidentiary
 6   hearing until you're done, and then closing arguments.  And
 7   we'll see how the evidentiary hearing goes, if I need some time
 8   to assess and deliberate.  And then I'll get a decision out one
 9   way or the other.
10              Does that make sense?
11              MR. TRAD:  Makes sense to me, Your Honor.
12              MR. ELLENBOGEN:  That sounds very good.
13              May I suggest maybe to Mr. Trad.  I know there's
14   rooms right around the corner.  I think there's rooms that we
15   can discuss, and I can call my colleagues in New York as well,
16   and we can all see if we can work out some of these issues
17   right now while we're here.
18              THE COURT:  I appreciate that.  You can use the
19   courtroom.  You can use the conference rooms right outside.  We
20   won't lock it up for you.
21              MR. ELLENBOGEN:  Okay.
22              MR. TRAD:  Thank you so much, Your Honor.
23              THE COURTROOM DEPUTY:  All rise.  This Court is in
24   recess.
25              (Proceedings concluded at 10:23 a.m.)
```

*CERTIFICATE OF OFFICIAL REPORTER*

COUNTY OF LOS ANGELES   )
                        )
STATE OF CALIFORNIA     )

        I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME COURT REPORTER, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

*Date: December 6, 2022*

                                                      */S/ DEBBIE HINO-SPAAN*

                                                   *Debbie Hino-Spaan, CSR No. 7953*
                                                 *Federal Official Court Reporter*